**Roscoe Curtis MONTGOMERY, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. A–17517.**

Court of Criminal Appeals of Oklahoma.

Oct. 17, 1972.

James C. Langley, Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Charles F. Alden III, Legal Intern, for appellee.

OPINION

BUSSEY, Presiding Judge.

Appellant, Roscoe Curtis Montgomery, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Oklahoma, for the offense of Attempted Burglary, After Former Conviction of a Felony; his punishment was fixed at a term of not less than five (5), nor more than ten (10) years imprisonment, by jury verdict, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Dr. Garold B. Phelps testified that he practiced medicine in his building at 1435 South Yale in Tulsa County. On October 6, 1971, he left his office between 5:30 and 6:00 p. m., after first checking the windows and doors to ascertain that they were locked. He testified that several thousand dollars worth of equipment and drugs were kept in the building. Sometime after midnight, he received a telephone call and returned to his office. He found that a padlock had been pried off a grate leading to an entrance underneath the house. The south storm window had been broken and there were pry marks on the window sill.

Officer Wolf testified that while on routine patrol on the morning in question, he observed a subject around a window at 1435 South Yale. He heard noises coming from the area and observed the storm window fall from the building. He radioed for assistance and parked his police unit behind a filling station. He climbed a wall and found the defendant lying in some grass approximately two to three feet from where the window had fallen. Defendant was wearing gloves and a tire tool was found approximately one foot away.

George Wheeler testified that he was employed with the Burns International Security Service. He checked Dr. Phelps' building at approximately 9:31 p. m. on the evening in question, and found that all the doors and windows were secure. He returned to the building at approximately 1:00 a. m. and found the police had a young Negro subject in custody. A storm window was lying on the ground with one glass panel broken out. The aluminum molding on the window had been ripped away and there were pry marks on the upper side of the window.

The defendant testified that he came to Tulsa from Wichita, Kansas to avoid trouble with an irate boyfriend of the girl he had been dating. He testified that he was on parole and wanted to avoid any trouble. He further testified that Sandra Kent Neal came to Tulsa with him and that they arrived about 2:30 in the afternoon. He dropped Sandra at a woman's house and went to a pool hall. He played pool with a boy named James, who offered him some capsules and pills. He told the boy that he did not want any and bought a coke, which he put on a table. He started feeling funny and the next thing he remembered was lying in the yard with a police officer standing over him. On cross-examination, he testified that after he was arrested the officers took him about a block and a half, or two blocks, to his car in which Sandra Neal was a passenger. He admitted previous convictions for first and second degree burglary.

Officer Glanz testified in rebuttal that he observed the defendant at the scene. He testified that the defendant seemed quite alert and had all his faculties about him.

■ The first proposition asserts that the Assistant District Attorney made an improper remark in his closing argument. The record reflects the Assistant District Attorney stated:

"* * * What is he doing running around with Sandra Kent Neal? And somebody shooting at him up in Wichita —he was trying to go straight. And she was up here in his car about a block away. Sandra K. Neal was in that car. Now, was Sandra K. a jigger? Was she the person driving that car, waiting for him that night?" (Tr. 175)

Defendant argues that the use of the term "jigger" injected the new element of con-

spiracy in the trial which resulted in prejudicing the jury. We are of the opinion that the question propounded to the jury by the Assistant District Attorney as to whether Sandra Kent Neal was a "jigger" was an entirely reasonable inference to be drawn from the evidence. Defendant testified on cross-examination as follows:

"Q. All right, who were you with?

A. Girl named Sandy, Sandra.

Q. How long were you with Sandra?

A. What do you mean? You mean that day?

Q. Yes, that day, here in Tulsa?

A. Here in Tulsa on that day about forty-five°minutes, more or less, about an hour.

Q. Her name Sandra Kent Neal?

A. That's right.

Q. You with her that night?

A. That's what they said.

Q. You don't remember?

A. No.

Q. You don't remember her being out there with you at the scene where you were picked up?

A. Out there when they picked me up they took me about a block and a half or two blocks to my car and she was in there. I remember seeing her then." (Tr. 116)

In Pickens v. State, Okl.Cr., 450 P.2d 837, we stated in paragraph 2 of the Syllabus:

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the State and defendant have a right to discuss fully from their standpoint the evidence, and the inferences and deductions arising therefrom."

We, therefore, find this proposition to be without merit.

■ The second proposition contends that the evidence was insufficient to support a conviction for Attempted Second Degree Burglary. Defendant contends that because of his involuntary intoxication there was a subsequent lack of criminal intent. We need only to observe that the defendant argued the question of intent to the jury which decided against him. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and to determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805.

■ The final proposition asserts "excessive punishment given under the influence of passion or prejudice." This proposition is not well taken. The jury was properly instructed in the second stage of the trial that a maximum sentence of ten (10) years could be imposed. See Fulton v. State, Okl.Cr., 491 P.2d 789. Considering the defendant's previous convictions for first and second degree burglary, we cannot consciously say that the sentence imposed shocks the conscience of this Court.

The judgment and sentence is accordingly affirmed.

SIMMS and BRETT, JJ., concur.