Ernest Marvin **CARTER, Jr., Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–91–160.

Court of Criminal Appeals of Oklahoma.

July 29, 1994.

Rehearing Denied Sept. 21, 1994.

David Autry, Paul Faulk, Asst. Public Defenders, Oklahoma City, for appellant at trial.

Robert Macy, Dist. Atty., Steve Deutsch, Asst. Dist. Atty., Oklahoma City, for State at trial.

Dora S. Roberts, Oklahoma City, for appellant on appeal.

Susan Brimer Loving, Atty. Gen., A. Diane Blalock, Asst. Atty. Gen., Oklahoma City, for State on appeal.

## OPINION

LUMPKIN, Presiding Judge:

Appellant Ernest Marvin Carter, Jr., was tried by jury and convicted of the crime of First Degree Murder while in the commission of a robbery pursuant to the felony murder doctrine codified at 21 O.S.1981, § 701.7, Case No. CRF–90–1012, in the District Court of Oklahoma County. The jury recommended the death penalty and the trial court sentenced accordingly. It is from this judgment and sentence that Appellant appeals.

Appellant and co-defendant Charles Summers[1] were found guilty of the first degree murder of Eugene Manowski, the security guard at the Oklahoma Auto Auction. On January 28, 1990, at approximately 8:00 a.m., Mr. Manowski was found by the day security guard in a pool of blood on the floor of the guard shack. He had been shot once in the head at close range. The lights in the guard shack had been turned off and the door was open. The drive-in gates to the auction yard were partially open and the lock on the gate was either bent or cut off.

Appellant had been employed by the Auto Auction as a security guard for approximately sixty (60) to ninety (90) days. He had been fired during the second week in January 1990. On the evening of January 27, 1990, Appellant, co-defendant Summers and Summers' girlfriend, Tammy Lewis, drove from their home in Chandler to the Oklahoma Auto Auction in Oklahoma City. With Summers driving, they pulled up to the Auto Auction. Summers broke the silence maintained since the group left Chandler by announcing "this is good". Appellant grabbed a pair of bolt cutters and left the car. Summers and Lewis returned to Chandler. Approximately two (2) hours later, Appellant woke up Summers and Lewis and told them he needed help with the truck and that he had killed a man. Summers and Lewis found Appellant in possession of a white wrecker truck with the word "Auction" on its side. They towed the truck to Summers' body shop in Chandler.

Larry Denson, an automobile mechanic who occasionally did work for co-defendant Summers, was approached by Appellant later that afternoon and asked to repair a white pickup with a wrecker attachment. Appellant told Denson he had "ripped the truck off." Denson attempted to humor Appellant, but Appellant persisted saying "a guy seen me rip it off but he's not going to tell anybody ... I offed him." When Appellant told Denson he had no choice but to kill the decedent, Denson told him he did have a choice, that he should not have been there.

Appellant and Summers painted the truck from the Auto Auction and removed the wrecker attachment, placing it in an old pickup with the intention of hiding it on family property. When the pickup containing the wrecker attachment became stuck in the mud, the wrecker attachment was removed and partially buried. A few days later, Appellant and Summers took the truck from the Auction to a county road between Chandler and Davenport and attempted to burn it.

1. Co-defendant Summers has perfected a separate appeal to this Court. See F–91–749.

Appellant took the witness stand in his own defense and denied any involvement in the robbery/homicide. He admitted seeing the wrecker from the Auto Auction in Summers' body shop, the same day he heard about the murder, and to assisting Summers and Lewis in getting rid of the truck. Appellant testified he helped Summers paint the Auto Auction truck and remove the wrecker assembly.

## PRE–TRIAL ISSUES

Appellant asserts in his first assignment of error that the trial court erred in denying his repeated requests for a trial separate from that of his co-defendant. Appellant argues that the defenses presented by himself and co-defendant Summers were mutually antagonistic. Therefore, under recent rulings from this Court, he and his co-defendant were entitled to separate trials. The State disputes this argument claiming that the joint trial was proper as the defenses were not mutually antagonistic.

■ Defenses are mutually antagonistic where each defendant attempts to exculpate himself and inculpate his co-defendant. *Van-Woundenberg v. State*, 720 P.2d 328, 331 (Okl.Cr.1986), *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986). In *Bryson v. State*, 876 P.2d 240, 247–50 (Okl.Cr.1994) we found this two part test for establishing mutually antagonistic defenses requires a defendant to both (1) exculpate himself and (2) inculpate a co-defendant. In the present case, both defendants denied involvement in the robbery/homicide at the Oklahoma Auto Auction, but admitted to conduct which would make them accessories after the fact. Appellant doing so in his trial testimony and co-defendant Summers in pre-trial statements to police.

■ In his testimony Appellant admitted his involvement in attempting to get rid of the stolen wrecker from the Auto Auction. He testified to assisting the co-defendant in repainting the truck, dismantling the winch assembly, and hiding the winch. When asked how he thought the wrecker got to the co-defendant's shop, he said he thought someone had stolen it for Summers, he did not think Summers was actually at the Auto Auction. Appellant further testified that when he assisted in the concealment of the truck he did not know that Mr. Manowski had been murdered. Appellant in no way inculpated the co-defendant in the murder of Eugene Manowski. Similarly co-defendant Summers did not inculpate Appellant in the murder. In pre-trial statements to police, co-defendant Summers admitted only to towing the wrecker from his shop to the outskirts of town. He denied any knowledge of the murder or that the wrecker had been stolen from the Auto Auction. Both men attempted to exculpate themselves but not by inculpating the other. Therefore their defenses were not mutually antagonistic. *Bryson v. State*, 876 P.2d at 247–50.

Contrary to Appellant's further argument, antagonistic defenses were not created by the conduct of the defense attorneys. During the trial the defendants were obviously hostile to each other, but their disagreements concerned peripheral issues, and not the crime itself. In arguments to the jury and cross-examination of witnesses both defendants attempted to disparage the character and reputation of the other; allegations that co-defendant Summers had access to guns and that he sold drugs and acquired stolen property out of his body shop; that Appellant had a reputation for being violent; and that each was intimately involved with Tammy Lewis and she was biased in favor of the other. None of this however, addressed the actual defenses to the crimes. The nature of these arguments was accurately summarized by the trial court in commenting on an allegation regarding stolen property out of the co-defendant's body shop. The trial court described the parties arguments as "attempted character assassination on an irrelevant issue." (Tr. 822).

While counsel for each defendant did attempt to cast aspersions at their co-defendant, and neither counsel displayed much restraint in attacking the other, the thrust of

**1242**

their arguments was to test the State's case. Each argued that the evidence linked the co-defendant to the crime, but each also argued that the evidence also linked others to the crime, including Tammy Lewis and Larry Denson. Although both defendants introduced prior bad acts of the other, neither assisted the State in making its murder case against the other. As neither defendant attempted to exculpate himself by inculpating the other, their defenses were not mutually antagonistic. Therefore, the trial court's denial of severance was proper.

■ In his second assignment of error, Appellant alleges he was denied a fair trial because the judge who presided over the trial, District Judge Jack Parr, had been recently defeated in a bid for re-election. Appellant argues this action "undermines and emasculates the principle of equality and the spirit and purpose of the Constitution." (Appellant's brief, pg. 30). He further argues that "compounding the blatant jurisdictional error", was the prejudicial manner in which the judge behaved towards the defense. Judge Parr had been a long time district judge in Oklahoma County when he was defeated in an election held in the fall of 1990. He was subsequently appointed by the Oklahoma State Supreme Court to sit as a temporary judge and presided over the trial of this case in February, 1991.[2] Title 20 O.S.1981, § 103.1, allows the State Supreme Court to appoint active retired judges to sit as temporary judges and empowers them to make final disposition of any matter regularly submitted or tried before the judge during the term of his or her designation[3]. Therefore, we find no error in Judge Parr's presiding over the trial of this case.

■ Further, we find no merit to Appellant's allegation of bias and prejudice on behalf of the trial judge. There is a general presumption of impartiality on the part of judges as to matters before them. *Pittman v. State*, 718 P.2d 366, 369 (Okl.Cr.1986). In making a claim of bias, a defendant must demonstrate some prejudice which denied him due process or fundamental fairness. *See Robison v. State*, 818 P.2d 1250, 1252 (Okl.Cr.1991). In support of his argument, Appellant directs our attention to specific instances in the record but then asserts "[t]he cold print of the record cannot convey the openly hostile manner in which counsel were sometimes treated by the judge." (Appellant's brief pg. 32). The "cold print of the record" is the evidence upon which this Court must base its decisions and not accusations lacking support in that record. See *Fuller v. State*, 751 P.2d 766, 768 (Okl.Cr. 1988); *Standridge v. State*, 701 P.2d 761, 764 (Okl.Cr.1985).

Having reviewed Appellant's specific allegations of bias and the record as a whole, we find Appellant has failed to overcome the presumption of impartiality. None of the conditions warranting judicial disqualification pursuant to 20 O.S.1981, § 1401, were present in this case. Nothing in the record indicates that the conduct and rulings of the trial judge denied Appellant a fair trial. Accordingly, this assignment of error is denied.

### JURY SELECTION ISSUES

#### A.

In a sub-proposition to his first assignment of error, Appellant argues the trial court erred in refusing to grant each co-defendant

---

**2.** Judge Parr retired from the bench December 31, 1990. Upon application to the State Supreme Court, pursuant to 20 O.S.1981, § 1107, he had been approved as a retired active judge.

**3.** 20 O.S.1981 § 103.1, Temporary judge or judge pro tempore—Authority—Per diem and expenses, provides in pertinent part:
A. Any judge of the district court designated by the Chief Justice.... or designated by the chief judge of the district court and approved by the Chief Justice, shall have continuing authority, without further assignment, to make final dispo-

sition of any matter regularly submitted or tried before him during the term or period of time of his designation, appointment or election, including motions and petitions for new trial and for judgment notwithstanding the verdict, and of all applications and proceedings pertaining to the making, serving, amendment, settlement, signing, correcting, extending time and completing of case made, transcript, or original record for appeal, notwithstanding the term or period of time for which he was designated or appointed has expired; ...

the full complement of peremptory challenges during voir dire. He asserts that 22 O.S.1981, § 655, absolutely requires that a defendant be permitted to exercise the full complement of nine (9) peremptory challenges when the defenses of the jointly tried defendants are inconsistent. The State responds by asserting that the defendants did not have inconsistent defenses during the first stage of trial and therefore, they were properly required to share the peremptory challenges. Relying on *Neill v. State*, 827 P.2d 884 (Okl.Cr.1992), the State argues that when the defenses are inconsistent only as to culpability or punishment, and not guilt or innocence, the defendants may be properly required to share their peremptory challenges.

■ Title 22 O.S.1981, § 655[4] provides that all jointly tried defendants must share peremptory challenges unless inconsistent defenses are presented. The defenses presented by Appellant and his co-defendant were neither mutually antagonistic nor inconsistent. Both claimed to have been involved only after the fact. Neither directly inculpated the other in the murder. Forcing the State to prove its case against Appellant was not an incompatible or contradictory position to forcing the State to prove its case against co-defendant Summers. *See Bryson v. State*, 876 P.2d at 247–50.

■ Appellant contends that he was further prejudiced by the lack of additional peremptory challenges as he was facing the death penalty and co-defendant Summers was not. This argument is not supported in the law or the facts. In fact, the record

shows that the defendants agreed on the exercise of all peremptories except for the last one. The trial court gave the defense one extra challenge, for a total of ten (10), so that both Appellant and the co-defendant could execute a final peremptory challenge. Therefore, we find no error in the defendants sharing of peremptory challenges.

### B.

In his third assignment of error, Appellant asserts the jury selection process denied him a fair trial.[5] In this multi-faceted argument Appellant initially argues the State is "armed with more guarantees for purging a jury of any of those who might be circumspect, if not outright opposed to the death penalty." (Appellant's brief, pg 37).

The original decision concerning death penalty voir dire is *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The United States Supreme Court determined that the death penalty could not be carried out if the jury that imposed it had been selected by excluding for cause venirepersons who expressed general objection to the death penalty or conscientious or religious scruples against its infliction. Subsequently, in *Wainwright v. Witt*, 469 U.S. 412, 416, 105 S.Ct. 844, 847, 83 L.Ed.2d 841, 846 (1985), the Court recognized "the State's legitimate interest in excluding those jurors whose opposition to capital punishment would not allow them to view the proceedings impartially, and who therefore might frustrate administration of a State's death penalty scheme". In *Wainwright*, the Court clarified its *Witherspoon* decision and held that the proper standard for determining when a

---

4. Title 22 O.S.1981, § 655 provides in pertinent part:

In all criminal cases the prosecution and the defendant are each entitled to the following peremptory challenges: Provided, that if two or more defendants are tried jointly they shall join in their challenges; provided, that when two or more defendants have inconsistent defenses they shall be granted separate challenges for each defendant as hereinafter set forth.
First. In prosecutions for first degree murder, nine jurors each.

5. In footnote No. 3 of his appellate brief, Appellant argues that excluding from the jury lists those who are over seventy (70) years old and those who do not have drivers' licenses violates the constitutional rights to a representative jury panel. We have previously considered and rejected both of these arguments. *See Bryson v. State*, 876 P.2d at 250–51. We are not persuaded to depart from our previous decisions.

prospective juror may be excluded for cause because of his or her views on capital punishment is "whether the juror's views would prevent, or substantially impair, the performance of his duties as a juror in accordance with his instructions and his oath." 469 U.S. at 424, 105 S.Ct. at 852, 83 L.Ed.2d at 851–852. The Court further stated that it was dispensing with *Witherspoon's* reference to "automatic" decision making and that the new standard did not require that a juror's bias be proved with "unmistakable clarity." *Id.* On its face *Wainwright* should have alleviated any problems with juror bias concerning the death penalty as its standards applied to both the prosecution and the defense. However, the Supreme Court recently addressed the issue of "Witherspoon-excludables" or those jurors who would automatically vote for the death penalty in *Morgan v. Illinois,* 504 U.S. ——, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), and *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). The Court held in these decisions that those jurors who will automatically vote for the death penalty "will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do so." *Morgan,* 504 U.S. at ——, 112 S.Ct. at 2229, 119 L.Ed.2d at 502. Such prospective jurors are to be removed from the jury panel for cause. *Id.* The *Morgan* and *Wainwright* decisions require that jurors be willing to go into the trial with no preconceived notions of either stance, death or life. *Id.*

■ Essentially, that is the same standard applied by this Court. We have held that a venireperson is only required to be willing to consider all the penalties provided by law and not be irrevocably committed before the trial has begun. *Banks v. State,* 701 P.2d 418, 421–422 (Okl.Cr.1985); *Davis v. State,* 665 P.2d 1186, 1190 (Okl.Cr.1983), *cert. denied* 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983). In applying that standard this Court looks to the entirety of the juror's voir dire examination to determine if the trial court properly excused the juror for cause. *Castro v. State,* 844 P.2d 159, 166 (Okl.Cr.

1992); *Davis v. State,* 665 P.2d at 1194. Based upon the foregoing, Appellant's argument that the State is armed with "more guarantees" than the defense "for purging a jury" of those it considers "circumspect" is not supported by the case law from either the United States Supreme Court nor this Court.

■ Turning to the specific allegations in the present case, Appellant contends the trial court's characterization of defense counsel's rehabilitation efforts toward prospective juror Sayre as "haranguing" the juror was "prejudicial in constitutional proportions." The record shows Mrs. Sayre indicated that consideration of the death penalty "really bother[ed]" her and that she did not feel she could face her children every day if she had to make that decision. (Tr. 177–178). She had originally said she could consider the death penalty, but later changed her mind. After a few more similar remarks, the State moved to excuse Mrs. Sayre for cause. Appellant's counsel attempted to rehabilitate Mrs. Sayre by repeatedly asking her if she could consider all punishment options. After responses to the effect that she believed the death penalty was the law but she did not think that she could subject someone to it, that she did not think she could do it emotionally and live with herself, Mrs. Sayre was excused for cause. The trial court noted for the record Appellant's objection, commenting that the juror had been "harangued enough." (Tr. 181). While the court's personal commentary may have been unnecessary, we find it was not prejudicial. Mrs. Sayre was properly removed for cause as her statements concerning her feelings about the death penalty indicated views which would prevent, or substantially impair her performance as a juror in accordance with her instructions and oath.

■ To further support his argument that his interests were not given equal consideration during jury selection, Appellant directs this Court's attention to ten (10) prospective jurors who were excused for cause compared to one whose challenge for cause

was overruled. Of the ten (10) venirepersons singled out by Appellant, we need only turn our attention to five (5) who were excused for cause due to their views on the death penalty.[6] Each of these five (5) potential jurors expressed views which would substantially impair their performance as jurors. Responses such as "I don't think I could" consider all three available punishment options, that the juror "could not consider" the death penalty, and that "it would be impossible" for the juror to consider the death penalty indicate these potential jurors could not put aside their personal beliefs in deference to the law and their oath as jurors. Therefore, they were properly excused for cause. *See Banks v. State*, 701 P.2d 418, 422 (Okl.Cr. 1985); *Dutton v. State*, 674 P.2d 1134, 1138 (Okl.Cr.1984).

 These potential jurors are compared by Appellant to Mr. Deshazo. This venireperson informed the court that he knew the decedent but that he could set aside any personal feelings and abide by the law and that he would render the punishment appropriate under the law and facts of the case as presented during trial. When Mr. Deshazo's responses are reviewed in context, it is clear that he was not biased in any way and did not harbor views which would impair his performance as a juror. There we find no abuse of discretion in the trial court's refusal to excuse him for cause.[7]

 Finally, Appellant attacks the State's use of peremptory challenges to exclude two (2) black venirepersons in violation of *Batson v. Kentucky*, 476 U.S. 79, 98, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). *Batson* holds that once a prima facie case of discriminatory selection is established, the prosecutor can rebut the Appellant's case by giving a racially neutral explanation for the peremptory challenge. It also observes this explanation need not rise to the level justifying excusal for cause, *Id.*, 476 U.S. at 97–98, 106 S.Ct. at 1723; and the findings of the trial court are entitled to great deference. *Id.* at 98 n. 21, 106 S.Ct. at 1724 n. 21.

 The prosecutor offered as reasons for excusing the two potential jurors as one was a twenty-two (22) year old single male college student with a pony tail with whom the prosecutor had difficulty communicating with during voir dire. (Tr. 303). The other potential juror stated several times she did not believe in the death penalty.[8] These reasons are sufficiently race neutral explanations to pass constitutional muster.[9] *See Allen v. State*, 871 P.2d 79, 90 (Okl.Cr.1994).

6. This group of 10 singled out by Appellant includes Mrs. Sayre, previously found to have been properly excused for cause; Venireperson Dever who was excused for medical reasons, to which Appellant raised no objection (Tr. 151); Ms. Stafford whose excusal for cause due to personal reasons (ill sister) drew no objection from Appellant (Tr. 254–256); Mr. Cooper, who felt his acquaintance with co-defendant Summers' sister would affect his ability to be impartial and whose excusal for cause was supported by Appellant (Tr. 564–566); and Mr. Ray, who stated that he would have some prejudice against the State due to past dealings with the District Attorney's office and because his brother was a police officer. His excusal for cause brought no objection from Appellant. (Tr. 593).

7. In *Wainwright v. Witt*, 469 U.S. at 423–25, 105 S.Ct. at 852, the Supreme Court noted that determinations of juror bias simply cannot be reduced to "question and answer sessions which obtain results in the manner of a catechism." This Court has previously noted that trial judges, having heard the juror's voice inflection and viewed his demeanor, may be fairly convinced of a juror's bias when such bias appears in a written record to be less than unmistakably clear. *Davis v. State*, 665 P.2d 1186 (Okl.Cr.1983). *See also Banks v. State*, 701 P.2d 418, 423 (Okl.Cr.1985). Therefore, this Court will not disturb the decision of the trial court absent an abuse of discretion. *Rojem v. State*, 753 P.2d 359, 363 (Okl.Cr.1988).

8. Upon the State's exercise of its peremptory challenge on prospective juror Parrish, the trial court indicated that it should have excused her for cause as the record showed that she was "totally incapable of considering the death penalty under any circumstances." (Tr. 388).

9. This is assuming arguendo that Appellant made a prima facie showing of a *Batson* violation. This issue we do not decide but note for the record that the prosecutor indicated race was not the reason for his challenges and at the time he challenged Ms. Parrish, four remaining venirepersons were black and were not challenged by the State.

1246

## FIRST STAGE TRIAL ISSUES

### A.

In a sub-proposition to his first assignment of error, Appellant argues his constitutional right to confront his accusers was violated by the admission of testimony from the investigating officers concerning pre-trial statements made by Tammy Lewis and co-defendant Summers. Appellant contends that "this is classic instance of introduction of a co-defendant's statements while not allowing the accused the right to cross-examine and thus thoroughly test the co-defendant's statements. *Bruton v. United States,* [391 U.S. 123] 88 S.Ct. 1620 [20 L.Ed.2d 476] (1968)." (Appellant's brief, pg. 25).

Homicide Detective Eric Mullenix testified to interviewing codefendant Summers. Mullenix stated that Summers told him a wrecker appeared at his shop and he was asked to assist in towing it. Appellant's name was never mentioned. Homicide Detective John Maddux testified to interviewing Ms. Lewis three (3) separate times. He stated that during the first interview she denied any knowledge about the robbery/homicide. Feeling that she was not being truthful, Maddux interviewed her again. Maddux did not testify as to the contents of any of the interviews.

The Confrontation Clause of the Sixth Amendment to the U.S. Constitution guarantees the accused the right to be confronted with the witnesses against him. Neither of the statements identified in the testimony of the detectives made Summers a witness against Appellant. These statements are not the type prohibited in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); and *Lafevers v. State,* 819 P.2d 1362, 1366 (Okl.Cr.1991), cases relied upon by Appellant, as they did not inculpate Appellant. Therefore, Appellant was not denied his constitutional right of confrontation.

### B.

In his fourth assignment of error, Appellant contends that the trial court erred in refusing to give his requested jury instruction that Tammy Lewis was an accomplice as a matter of law. The test used to determine whether a witness is an accomplice is whether he or she could be indicted for the offense for which the accused is being tried. *Nunley v. State,* 601 P.2d 459, 462 (Okl.Cr.1979). Tammy Lewis was not charged with the commission of a criminal offense. Ms. Lewis testified that detectives told her she could be charged as an accessory to murder, but no charges were ever filed by the State. The evidence shows that Ms. Lewis accompanied Appellant and co-defendant Summers to the Auto Auction the night of the murder. They left Appellant there and returned to Chandler. She subsequently helped the men get rid of the truck stolen from the auction. She denied seeing either defendant with a gun that night. Nothing in the record indicates that she was aware of the purpose for the trip to the Auto Auction or that Appellant was going to kill the victim. Therefore, we find that she was not an accomplice and the trial court properly refused to give any such jury instruction. *See Mills v. State,* 737 P.2d 573, 574 (Okl.Cr.1987).

Appellant further argues error in the trial court's refusal to give his requested cautionary instruction on informant testimony. The instruction requested by Appellant stated in part "the testimony of an informer who provides evidence against a defendant for pay, for immunity from punishment, or for personal advantage or vindication must be examined and weighed by you with greater care than that of an ordinary witness." (O.R. 247). Nothing in the record indicates that Ms. Lewis was an informant who testified for pay, immunity from punishment, personal advantage or vindication. She testified that she had not been charged with a criminal offense and that no promises had been made to her in exchange for her testimony. Finding no support for Appellant's requested instruction in the record, we find no error in the trial court's refusal to so instruct the jury.

### C.

In his fifth assignment of error, Appellant contends the trial court erred in allowing the

State to call a climatologist to testify in rebuttal. Appellant argues the evidence was not proper rebuttal, but merely the State's attempt to re-open its case in chief and that the evidence was more prejudicial than probative.

 Rebuttal evidence may be offered to explain, repel, disprove or contradict facts given in evidence by the adverse party, regardless of whether such evidence might be introduced in the case in chief or is somewhat cumulative. *Boyd v. State*, 743 P.2d 658, 662 (Okl.Cr.1987); *Hall v. State*, 698 P.2d 33, 37 (Okl.Cr.1985). Admission of such evidence is a matter addressed to the sound discretion of the trial court whose ruling will not be reversed absent a showing of a manifest abuse of discretion. *Burney v. State*, 594 P.2d 1226, 1229 (Okl.Cr.1979).

During its case in chief, the State presented evidence of boot prints at the auction consistent with boots worn by Appellant. Appellant took the witness stand and admitted to being at the auction yard in the days preceding the murder. He testified he walked up and down the fence line looking for his lost dog. In rebuttal, the State called Mr. Howard Johnson, a climatologist, to testify to the local weather conditions in the days preceding the murder. He stated that it rained in the Oklahoma City area during the period January 14–27, 1990. On cross-examination, defense counsel pointed out that it could have rained at the reporting cites but not at the Auto Auction, which was several miles away. Mr. Johnson admitted that was true. However, photos from the crime scene showed puddles of water at the auction yard.

 The climatologist's testimony was proper rebuttal to Appellant's testimony that he could have made the boot prints during the time he was looking for his dog. The evidence would not have been properly introduced during the State's case in chief as the age of the boot prints had not become an issue. It was not until Appellant admitted to being at the yard in the days preceding the murder was it necessary for the State to show prints made at that time would have been washed away in the rain. Further, Appellant was not unduly prejudiced by this evidence as defense counsel was able to thoroughly cross-examine the rebuttal witness. Accordingly, we find the trial court did not abuse its discretion in admitting the rebuttal evidence.

### D.

 In his sixth assignment of error, Appellant challenges the sufficiency of the evidence supporting the first degree murder conviction. He argues that no direct evidence connected him to the murder. Therefore, the evidence must be reviewed under the standard set forth for circumstantial evidence; that being the evidence must be inconsistent with any reasonable hypothesis other than the defendant's guilt. *Smith v. State*, 695 P.2d 1360, 1362 (Okl.Cr.1985). In his brief, Appellant explains in great detail how the evidence is inconsistent with his guilt and consistent with that of co-defendant Summers and Tammy Lewis.

 Addressing first his standard of review, we disagree with the conclusion that the evidence against Appellant is purely circumstantial. Appellant was charged with committing the murder of Eugene Manowski during the course of a robbery at the Oklahoma Auto Auction. Direct evidence of Appellant's guilt in the charged offense came from his own admissions that he had killed a man and his physical possession of the stolen wrecker. The rest of the evidence presented against Appellant, including the testimony of Tammy Lewis concerning Appellant's presence and possession of the bolt cutters at the Auto Auction and the boot prints, is circumstantial evidence tending to prove guilt. Therefore, because the proof presented at trial consisted of both direct and circumstantial evidence, we will review the sufficiency of the evidence under the standard set forth in *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985); whether after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of

the essential elements of the crime beyond a reasonable doubt. *Moore v. State*, 788 P.2d 387, 400 (Okl.Cr.1990).

 As to Appellant's review of the evidence, it is well established that a reviewing court must accept all reasonable inferences and credibility choices that tend to support the verdict. *See Washington v. State*, 729 P.2d 509, 510 (Okl.Cr.1986). This Court will not engage in a type of de novo review. Appellant's arguments regarding the guilt of co-defendant Summers and witness Tammy Lewis are more appropriate to a closing argument at trial than to a proposition of error on appeal. The State presented evidence which clearly showed Appellant's involvement in the robbery and homicide at the Oklahoma Auto Auction. Appellant and Summers had talked about getting another wrecker for the body shop. Appellant knew where a wrecker was located at the Oklahoma Auto Auction. Appellant was in possession of bolt cutters, having borrowed them from a friend. Two (2) .38 caliber slugs, one taken from the decedent, were found at the scene. A few months earlier, Appellant had borrowed .38 caliber bullets from Summers' father. Appellant admitted owning a .38 caliber handgun, but said he had gotten rid of it five (5) months prior to the murder. Boot prints, consistent with boots worn by Appellant were found along the fence line, and near a thirty (30) inch gap in the fence. A few hours after being left at the auction yard, Appellant was seen in possession of a wrecker taken from the Auto Auction. Appellant subsequently admitted to two different peo-

ple he had killed a man. Appellant attempted to dispose of the truck from the auction by removing the wrecker assembly, repainting the truck and eventually burning it.

 We need only note that this evidence was presented to the trier of fact who decided against the Appellant. Although there may be conflicts in the evidence and different inferences drawn therefrom, if there is competent evidence to support the verdict, we will not interfere on appeal. It is the exclusive province of the trier of fact to weigh the evidence and determine the facts. *See Montgomery v. State*, 502 P.2d 353, 355 (Okl.Cr.1972). We find the evidence sufficient for a rational trier of fact to find beyond a reasonable doubt that the decedent was killed by Appellant during the commission of the robbery. Accordingly, this assignment of error is denied.

### E.

 Appellant argues next that the trial court erred in refusing to give his requested jury instruction on the lesser included offense of second degree murder [10]. He also finds error in the failure to give an instruction on first degree manslaughter [11], although none was requested. Appellant supports his request for lesser included instructions by citing to a statement made by the State in closing argument that the evidence did not establish who introduced the gun to the crime scene and by claims that evidence of duress and intoxication negated the intent

10. 21 O.S.1981 § 701.8. Murder in the second degree provides as follows:
Homicide is murder in the second degree in the following cases:
1. When perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual; or
2. When perpetrated by a person engaged in the commission of any felony other than the unlawful acts set out in Section 1, subsection B, of this act.

11. 21 O.S. § 711. Manslaughter in the first degree is defined as:

Homicide is manslaughter in the first degree in the following cases:
1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.
2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.
3. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed.

element of malice aforethought murder. However, Appellant's defense at trial was he was not involved with the murder.

■ In a murder prosecution, the trial court is to instruct on every degree of homicide which the evidence tends to prove. *Tarter v. State,* 359 P.2d 596, 601 (Okl.Cr.1961). *See also Camron v. State,* 829 P.2d 47, 56 (Okl.Cr.1992). Nothing in the record indicates that instructions on lesser offenses was warranted. The nature of the gunshot wound, once to the head; combined with evidence of the illegal entry into the auction yard, and the theft of the wrecker, illustrate Appellant's intention to rob the auction of the wrecker and not leave any witnesses.

■ Contrary to Appellant's argument, malice aforethought was not an element to be proven by the State[12]. Further, nothing in the record indicates that Appellant was under duress or intoxicated at the time of the robbery/homicide. Appellant has correctly recited a portion of the State's closing argument, but the fact that evidence did not show who introduced the gun to the scene, does not warrant instructions on lesser included offenses. Logical conclusions from the evidence do show that Appellant used the gun to commit the murder. Further, giving Appellant's requested instructions would have been inconsistent with his defense of non-involvement. *See Robedeaux v. State,* 866 P.2d 417, 431 (Okl.Cr.1993). While Appellant is entitled to an instruction on his theory of defense, he is not entitled to instructions on every possible theory of defense. *See Kinsey v. State,* 798 P.2d 630, 633 (Okl.Cr.1990). Therefore, we find no error in the failure to give instructions on these lesser included offenses. Accordingly, this assignment of error is denied.

### SENTENCING STAGE ISSUES

#### A.

■ In a sub-proposition to his first assignment of error, Appellant argues the fail-

ure to grant a severance of trials resulted in a fundamentally unfair punishment proceeding. He contends he was prevented from presenting relevant mitigating evidence as it would have aggravated the co-defendant's responsibility. The evidence which Appellant sought to introduce concerned allegations that co-defendant Summers operated as a fence for stolen goods and as a drug dealer out of his body shop and that the success of the body shop business was due to this illegal activity. Appellant also sought to introduce evidence that the codefendant had several guns which he kept hidden.

■ The sentencer in a capital trial cannot be precluded from considering any relevant mitigating evidence. *Eddings v. Oklahoma,* 455 U.S. 104, 114, 102 S.Ct. 869, 876, 71 L.Ed.2d 1, 11 (1982). *See also Hitchcock v. Dugger,* 481 U.S. 393, 397, 107 S.Ct. 1821, 1824, 95 L.Ed.2d 347, 399 (1987); *Skipper v. South Carolina,* 476 U.S. 1, 4, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1, 7 (1986). Relevant mitigating evidence includes the character and record of the individual offender and the circumstances of the particular offense. *See Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). Evidence of a co-defendant's unrelated bad acts could not possibly have been mitigating as to Appellant's level of participation in the crime, nor as to Appellant's character.

Contrary to Appellant's argument, this case is distinguishable from *Lafevers v. State,* 819 P.2d 1362 (Okl.Cr.1991), wherein the jointly tried defendants attempted to avoid the death penalty by using the second stage of trial to present evidence to lessen their own participation in the criminal offenses charged. Here, the defendant did not present evidence during the second stage of trial as to his level of participation in the crime. He presented only witnesses who testified to his good character and reasons why his life should be spared.

■ The trial court's exclusion of evidence of unrelated bad acts by the co-defen-

---

**12.** Charging Appellant with felony murder, the State need only prove the murder occurred dur-

ing the commission of the robbery.

dant did not impede the jury's ability to consider all relevant facets of Appellant's character in determining punishment. Instructions to the jury allowed for full consideration of any and all relevant mitigating evidence. Contrary to Appellant's argument, the fact co-defendant Summers received a sentence of "ordinary life", which includes the possibility of parole, is no indication of any prejudice suffered by Appellant as a result of the joint trial. The State did not seek the death sentence against the co-defendant. We find the trial court's refusal to sever the defendant's cases in no way contributed to the imposition of the death sentence. Accordingly, we find no error in the denial of severance.

### B.

Appellant contends in his ninth assignment of error the trial court erred in admitting into evidence a prior felony conviction for distribution of controlled dangerous substances. Appellant's complaint seems to be that admitting such evidence improperly enhanced his sentence and contributed to an accumulation of error which resulted in an excessive sentence—the death penalty.

Initially, the enhancement of punishment in a non-capital case and the sentencing stage of a capital trial serve entirely separate purposes. *See Paxton v. State,* 867 P.2d 1309, 1322 (Okl.Cr.1993). Here, evidence of the prior conviction was specifically admitted to support the aggravating circumstance of "continuing threat"[13]. The enhancement of punishment was not an issue in this case. The jury was thoroughly informed, through argument and instructions, as to the consideration to be given the prior conviction. Therefore we find the evidence was not used for any improper enhancement purposes.

Further, we find no support for an argument of cumulative error. The fact this

evidence might be prejudicial to the defendant is no reason to exclude it from the jury's consideration. It is the nature of the criminal trial that the State presents evidence prejudicial to the defendant. Under our state death penalty scheme, the defendant is afforded due process rights of notice and opportunity to be heard in that he receives notice not only of the aggravating circumstance alleged against him but also of the evidence to be used to support those aggravators. The defendant then has the opportunity to prepare to meet and rebut this evidence at trial. Here, not only did Appellant receive notice in the Bill of Particulars that this evidence would be used against him, but he admitted to the prior conviction during his first stage testimony. Accordingly, we find no error in the admission of this evidence.

### C.

In his tenth assignment of error, Appellant challenges the sufficiency of the evidence supporting the aggravating circumstance that the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution. "The focus of this aggravating circumstance is the state of mind of the murderer; it is he who must have the purpose of avoiding or preventing lawful arrest or prosecution." *Banks v. State,* 701 P.2d 418, 426 (Okl.Cr.1985). This aggravator also requires a predicate crime, separate from the murder, for which the appellant seeks to avoid arrest or prosecution. *Barnett v. State,* 853 P.2d 226, 234 (Okl.Cr.1993).

In the present case, Appellant had been fired from his job as a security officer at the Oklahoma Auto Auction approximately two (2) weeks before the murder. Appellant knew of the existence of the wrecker at the auction, having driven it during his employment. The theft and murder were carried out during the early morning hours when the

---

**13.** Evidence of a prior conviction is properly admissible to support the aggravating circumstance that the Appellant is likely to commit future acts of violence that would constitute a continuing threat to society. *Williamson v. State,* 812 P.2d 384, 405 (Okl.Cr.1991); *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985). The fact that the jury in the present case did not find the evidence sufficient to support the alleged aggravator has no bearing on the admissibility of the evidence.

decedent was the sole person on the premises. There was no evidence of a struggle in the guard shack. The decedent was felled by one gunshot wound to the head. Soot found in the wound indicated the gun had been held next to the skin when fired. The bullet passed completely through the decedent's brain. Appellant told both Denson and Lewis that he killed a man because he had no other choice.

■ Despite evidence that Appellant had never met the decedent and had left his employment at the auction amicably, sufficient circumstantial evidence exists to support a conclusion that Appellant killed the decedent in order to avoid identification and arrest for the theft of the wrecker. The only way in or out of the Auto Auction was through the gate situated next to the guard house. (Tr. 684–687). The evidence supports the conclusion that in order to avoid detection when entering the Auto Auction or leaving the site with a vehicle, Appellant had to eliminate the person in the guard shack. Ample evidence was presented to support the jury's finding that this execution-style murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution. *See Fox v. State,* 779 P.2d 562, 576 (Okl.Cr.1989); *Rojem v. State,* 753 P.2d 359, 369 (Okl.Cr.1988).

### D.

■ Appellant contends in his eleventh assignment of error that Oklahoma's death penalty statutes are unconstitutional as they allow unbridled prosecutorial discretion in seeking the death penalty. Appellant argues the State's decision to seek the death penalty against him was arbitrary and capricious as there was no evidence showing that he was more culpable than co-defendant Summers or Tammy Lewis. As discussed previously in this opinion, the evidence showed that Appellant was the trigger man. Codefendant Summers participated in the planning of the robbery and helped Appellant dispose of the evidence after the crime. Tammy Lewis accompanied the men to the Auction, however

her involvement in the commission of the crimes was peripheral, if at all. Based upon this evidence it is logical for the State to seek the most severe punishment against Appellant. Measuring the relative culpability of the two individuals involved in the murder prior to seeking an appropriate sentence is a legitimate task of the prosecution. When the evidence is fully considered in this case, the decision to seek the death penalty against Appellant was not arbitrary or capricious.

■ In rejecting a similar challenge to the death penalty statutes in *Romano v. State,* 847 P.2d 368, 392 (Okl.Cr.1993), this Court stated that it was the obligation of a criminal defendant to demonstrate that the government's prosecution of him was based upon impermissible discriminatory grounds citing to *United States v. Blitstein,* 626 F.2d 774, 782 (10th Cir.1980). In the present case, Appellant has failed to make such a showing. When the statutes and case law are considered together, sufficient guidelines exist to properly direct prosecutorial discretion in making the decision whether to seek the death penalty. *See also Brown v. State,* 871 P.2d 56, 75 (Okl.Cr.1994).

### E.

In his twelfth assignment of error, Appellant contends Oklahoma's death penalty statutes are unconstitutional as they require the jury to make specific findings of fact in violation of Article 7, § 15 of the Oklahoma Constitution. This argument was addressed and rejected in *Romano v. State,* 847 P.2d 368, 384 (Okl.Cr.1993). *See also Bryson v. State,* 876 P.2d at 261. We see no reason to address the issue again.

### F.

In his thirteenth assignment of error Appellant challenges the instructions on mitigating evidence. He contends the instructions given to the jury were "inadequate and impeded the jury's ability to carry out 'the task of considering all relevant facets of the character and record of the offender.'" (Ap-

pellant's brief, pg. 95). He argues the trial court's refusal to give his requested instructions denied him "the right to serious consideration to a sentence less than death." Id.

The record reflects that Appellant presented twenty-five (25) requested jury instructions to the trial court. Of the fourteen (14) instructions addressing mitigating evidence, six (6) of the requested instructions have been previously reviewed by this Court and no error has been found by their exclusion.[14] The remaining requested instructions were either given separately as requested with a few minor changes in wording or were incorporated in the remaining instructions given to the jury. Reviewing the second stage jury instructions as a whole, as we are bound to do,[15] the instructions properly informed the jury of the State's burden of proof and of the jury's duty to weigh the aggravating and mitigating evidence in determining the appropriate sentence. We find the instructions in no way impeded the jury's ability to consider all relevant facets of Appellant's character and record.

### G.

Appellant contends in his fourteenth assignment of error that the trial court erred in failing to instruct the jury that the defendant must receive a life sentence unless the prosecution proves beyond a reasonable doubt that death is the only appropriate penalty. The giving of this "presumption of life" instruction has been previously rejected by this Court. *Fox v. State,* 779 P.2d 562, 574 (Okl. Cr.1989). *See also Boyd v. State,* 839 P.2d 1363, 1372 (Okl.Cr.1992). The instructions given in the present case adequately advised the jury of the appropriate law concerning sentencing and legally recognized presumptions. Accordingly, we find no error.

### H.

In his fifteenth assignment of error, Appellant finds error in the failure to give an instruction that the jury had the option to return a life sentence regardless of its findings respecting aggravating and mitigating circumstances. This argument was rejected in *Pickens v. State,* 850 P.2d 328, 339 (Okl. Cr.1993). Similarly, we find no error in the omission of such instruction in the present case.

## PROSECUTORIAL MISCONDUCT

In his seventh assignment of error, Appellant contends he was denied a fair trial by prosecutorial misconduct occurring during both stages of trial. Initially, he complains that during the second stage closing argument, the State argued facts not in evidence, specifically regarding events preceding the robbery. Of four (4) alleged misstatements, only one was met with a contemporaneous objection. This comment, as well as the other three (3), were fair comments based on the evidence introduced during trial. *See Allen v. State,* 871 P.2d 79, 96 (Okl.Cr.1994) (prosecutor has a right to comment on evidence that has been allowed before the jury).

The next two statements are alleged to be misstatements of the law made during the first stage closing argument; specifically the evidence necessary to support a conviction. Initially, the record reflects the comments were made in response to Appellant's attack on specific items of evidence, i.e., Larry Denson's testimony and the boot print evidence. In *Teafatiller v. State,* 739 P.2d 1009, 1010 (Okl.Cr.1987), we stated if the prosecutor's comments were "invited" and did no more than respond substantially in order to "right the scale", such comments would not warrant

---

**14.** The failure to give the following instructions requested in the case by Appellant was held not to be error in the following cases: Appellant's Requested Instruction No. 7. that the presumption of mitigation remains with the defendant was rejected in *Fox v. State,* 779 P.2d 562 (Okl. Cr.1989); Requested Instruction No. 8. that the finding of mitigating circumstances need not be unanimous was rejected in *Bryson v. State,* 876

P.2d at 262–63; Requested Instructions No. 9, 10, 11, 12, concerning a standard of proof of beyond a reasonable doubt as to the finding mitigating evidence were rejected in *Revilla v. State,* 877 P.2d 1143, 65 OBJ 1491 (Okl.Cr.1994).

**15.** *Nealy v. State,* 636 P.2d 378, 382 (Okl.Cr. 1981).

reversing a conviction. The comments in the present case reflect such a "righting of the scale". Further, we find no error in these comments as the prosecutor informed the jury this evidence was to be considered with the rest of the evidence presented at trial in reaching a decision as to guilt and the first stage jury instructions accurately set forth the burden of proof under which the prosecution's evidence was to be considered.

We disagree with Appellant's contention that in the next group of comments the prosecutor improperly vouched for the credibility of the witnesses and gave his personal opinion as to guilt. The prosecutor's remarks as to the testimony of Tammy Lewis and Larry Denson were made in response to Appellant's attacks on the witnesses. Further, when read in context, the prosecutor did not give his personal opinion of guilt, but properly prefaced his remarks by saying the "evidence is beyond any reasonable doubt that ..."

 Appellant describes the next group of statements as "inferences not substantiated by the evidence". During the cross-examination of Appellant, the prosecutor inquired as to whether Appellant was smiling when he fired the fatal shot. Appellant's objection was sustained. This type of inquiry, based on pure speculation, was condemned in *McCarty v. State,* 765 P.2d 1215, 1220 (Okl.Cr.1988). However, when this statement is considered in context of the entire record, it was not determinative of guilt and therefore does not warrant reversal of the conviction. See *Dunagan v. State,* 734 P.2d 291 (Okl.Cr.1987). We find the other two (2) comments, made during second stage closing argument, concerning the direction from which the fatal shot was fired and the distance between the weapon and the wound to be fair comments on the evidence. The last remarks concerning the difference in the punishments sought for Appellant and his codefendant was because "in some cases justice cries out" was proper as in light of this Court's holding that prosecutors may permissibly argue on behalf of justice. *See Sallee v. State,* 544 P.2d 902, 908 (Okl.Cr.1975).

 Appellant argues that a reference to whether it was justice to lock the defendant up and feed him three (3) meals a day was an improper comment on the cost of incarceration. We do not find this comment offensive as the prosecutor may argue for the maximum penalty to be given. *Hammer v. State,* 760 P.2d 200 (Okl.Cr.1988). Persuasive argument based upon the evidence does not constitute reversible error.

 Nor is there merit to the allegation that the prosecutor improperly commented on Appellant's lifestyle or made denigrating remarks about his association with women. Comments that the Appellant lived on and off with three (3) or four (4) different women and that at least one of the women was unemployed were fairly based upon evidence admitted at trial. The final remark to which Appellant complains is described as a plea for sympathy for the victim. Any error has been waived by Appellant's failure to object at trial. *Harvell v. State,* 742 P.2d 1138, 1142 (Okl.Cr.1987). Reviewing only for plain error, we find the comments were fairly based on the evidence and reasonable exhortations to return the maximum punishment. Accordingly, we find these remarks by the prosecutor do not warrant a disruption of the conviction or sentence in this case.

### MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.Supp.1987, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of the aggravating circumstances as enumerated in 21 O.S.1981, § 701.12. Addressing the second portion of the statute first, the jury found the existence of one aggravating circumstance; that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. 21 O.S.1981, § 701.12(5). As discussed above, that aggravator was supported by sufficient evidence.

 Mitigating evidence was presented by Appellant in the form of ten (10) witness-

es, including family members, friends, an inmate in bible study with Appellant and the assistant jail chaplain. These witnesses testified that Appellant had a family and friends who loved him, that Appellant had a positive influence on family and friends, that he contributed to the support of his mother and once saved his sister's life, that he was the product of a broken home, since his youth he has held a job and tried to work hard, he has sincere religious beliefs which he shares and communicates with others, and that Appellant has been and will continue to be a positive influence in prison society. This evidence was summarized into twelve (12) factors and submitted to the jury for their consideration as mitigating evidence. Upon our review of the record and careful weighing of the aggravating circumstances and the mitigating evidence, we find the sentence of death to be factually substantiated and appropriate. Under the record before this Court, we cannot say the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.Supp.1987, § 701.-13(C), in finding that the aggravating circumstance outweighed the mitigating evidence. Accordingly, finding no error warranting reversal or modification, the judgment and sentence for First Degree Murder is AFFIRMED.

JOHNSON, V.P.J., LANE and STRUBHAR, JJ., concur.

CHAPEL, J., specially concurs.

CHAPEL, Judge, specially concurring:

I concur in this decision only by reason of *stare decisis.* I have previously written separately to note the problems resulting in not granting each defendant a full complement of peremptory challenges in a joint trial. *Fowler v. State,* 873 P.2d 1053, 1055 n. 2 (Okl.Cr. 1994); *Bryson v. State,* 876 P.2d 240 (Okl.Cr. 1994) (Chapel, J., dissenting at 266); *Plantz v. State,* 876 P.2d 268 (Okl.Cr.1994) (Chapel, J., dissenting at 282). *See also Ross v. Oklahoma,* 487 U.S. 81, 89–91, 108 S.Ct. 2273, 2279–80, 101 L.Ed.2d 80 (1988); *Neill v. State,* 827 P.2d 884, 887 (Okl.Cr.1992).

In *Neill,* 827 P.2d at 884, we held that co-defendants are each entitled to a full comple-

ment of challenges only if they assert inconsistent defenses that relate directly to guilt or innocence. When the inconsistency relates to culpability or punishment, defendants may be required to share peremptory challenges. The problem with this analysis is that there is absolutely nothing in the statute, 22 O.S.1991, § 655, which distinguishes between guilt or innocence, or culpability or punishment. Here, the majority notes the State asserts only that the defendants did not have inconsistent defenses during the first stage. That *may* be true, but the defendants' defenses as to culpability in the second stage were inconsistent.

In this case, Carter was on trial for his life. The other defendant in this joint trial, Summers, was not at risk for the death penalty. The trial court ruled that the defendants would share the nine peremptories allowed by statute. Subsequently, a dispute arose among the defendants as to the exercise of their last remaining challenge and to solve the problem, the court allowed both the defense and the State one additional peremptory each. Thus, each defendant had five peremptories, and the State had ten.

This procedure is fundamentally unfair in any case. In a case such as this, however, where one defendant is at risk for the death penalty and the other is not, it should be intolerable.