Jackie Eugene HUMPHREYS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–95–402.

Court of Criminal Appeals of Oklahoma.

Oct. 10, 1997.

Rehearing Denied Nov. 17, 1997.

Joel P. Robertson, Capital Trial Division, Oklahoma Indigent Defense System, Tulsa, for appellant at trial.

Oliver R. Barris, III, Beryl R. Davis, Assistant District Attorneys, Eufaula, for the State at trial.

James A. Drummond, Cindy G. Brown, Capital Direct Appeals Div., Okla. Indigent Defense System, Norman, for appellant on appeal.

W.A. Drew Edmondson, Attorney General, Robert Whittaker, Assistant Attorney General, Oklahoma City, for appellee on appeal.

## OPINION

STRUBHAR, Vice Presiding Judge:

Appellant, Jackie Eugene Humphreys,[1] was tried by jury and convicted of one count of Murder in the first degree (21 O.S.Supp. 1982, § 701.7(A)) in the District Court of Okmulgee County, Case No. CRF–87–5001, the Honorable Anne Moroney, District Judge, presiding. The jury found three (3) aggravating circumstances[2] and recommended death. The trial court sentenced Appellant accordingly. Appellant appealed his Judgment and Sentence to this Court and we affirmed Appellant's conviction for murder, but vacated the sentence of death and remanded the case for resentencing because the jury was not instructed on the punishment option of life without the possibility of parole. *Humphrey v. State*, 864 P.2d 343 (Okl.Cr.1993). Pursuant to 21 O.S.Supp. 1993, § 701.10a, a jury was impaneled and a new sentencing proceeding was conducted before the Honorable Franklin D. Rahhal on April 3–6, 1995. The jury again returned a sentence of death finding the same three aggravating circumstances as the original sentencing jury.[3] The trial court sentenced Appellant to death and it is from this Judgment and Sentence that Appellant appeals. We affirm.

The facts of this case are set out in detail in *Humphrey v. State*, 864 P.2d at 344. Stated briefly, Appellant stabbed to death his common law wife, Bessie Phipps, on New Years Day 1987 in the Cuban Bar in Henryetta, Oklahoma. The evidence showed both Appellant and Phipps were alcoholics whose relationship was marked with violence. Phipps had moved out of Appellant's home prior to the murder. Other facts will be discussed as they become relevant.

1. Appellant is also referred to throughout the record as Jackie Eugene Humphrey.

2. [1] the defendant was previously convicted of a felony involving the use or threat of violence to the person; [2] the murder was committed by a person while serving a sentence of imprisonment on conviction of a felony; and [3] the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1981, § 701.12(1), (6) and (7) respectively.

3. *See* Note 2, *supra.*

## ISSUES RELATING TO
## JURY SELECTION

In his first proposition of error, Appellant argues the trial court's death–qualifying questions improperly diminished the jurors' sense of responsibility in determining the appropriate penalty because the trial court asked the prospective jurors if they could "recommend" a death sentence rather than whether they could "impose" a death sentence. *See Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); *Mayes v. State*, 887 P.2d 1288, 1324 (Okl.Cr. 1994) (Chapel, J. dissenting), *cert. denied*, 513 U.S. 1194, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995). Appellant contends asking jurors if they could recommend the death penalty rather than impose the death penalty conveyed to the jurors that their sentencing verdict would only be a recommendation which would be reviewed or considered for appropriateness.[4]

■ A death sentence is unconstitutional if it rests on a determination made by a jury which has been led to believe that the responsibility for deciding the appropriateness of the death penalty lies elsewhere. *Caldwell*, 472 U.S. at 329, 105 S.Ct. at 2639, 86 L.Ed.2d at 239. Only comments which mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision will violate *Caldwell*. *Darden v. Wainwright*, 477 U.S. 168, 183, n. 15, 106 S.Ct. 2464, 2472–73, n. 15, 91 L.Ed.2d 144 (1986).

■ In *Romano v. State*, 847 P.2d 368, 390 (Okl.Cr.1993), the trial judge advised each prospective juror during *voir dire* that it was his or her duty to determine whether or not, considering the evidence, death should be recommended. This Court held such a state-

ment was not error as it was a proper statement of the law. *Id. See also Wade v. State*, 825 P.2d 1357, 1360 (Okl.Cr.1992) (holding prosecutor's use of the phrase "recommend the death penalty" during *voir dire* did not amount to plain error because the statement would not have caused a reasonable juror to feel his or her ultimate responsibility was diminished). The Supreme Court affirmed this Court's decision in *Romano* and held that a *Caldwell* violation is only established if the remarks improperly describe the role assigned to the jury by local law. *Romano v. Oklahoma*, 512 U.S. 1, 8, 114 S.Ct. 2004, 2010, 129 L.Ed.2d 1 (1994). As in *Romano*, the question posed in the instant case was a proper statement of the law. We further note the trial court administered explicit instructions concerning the jury's duty to determine punishment as was done in *Romano*. Accordingly, we find the question did not divert the jury from its "awesome responsibility" of deciding the appropriate punishment. *Romano*, 847 P.2d at 390.

■ Next, Appellant argues the trial court abused its discretion when it excused prospective jurors Fitzl and Coker for cause and refused to allow defense counsel to rehabilitate them. The decision whether to disqualify a prospective juror for cause rests in the trial court's sound discretion whose decision will not be disturbed unless an abuse of discretion is shown. *Spears v. State*, 900 P.2d 431, 437 (Okl.Cr.), *cert. denied*, — U.S. ——, 116 S.Ct. 678, 133 L.Ed.2d 527 (1995); *Allen v. State*, 862 P.2d 487, 491 (Okl.Cr. 1993), *cert. denied*, 511 U.S. 1075, 114 S.Ct. 1657, 128 L.Ed.2d 375 (1994). To determine if the trial court properly excused a prospective juror for cause, this Court will review the entirety of the juror's *voir dire* examination. *Carter v. State*, 879 P.2d 1234, 1244 (Okl.Cr.1994), *cert. denied*, 513 U.S. 1172, 115

4. During *voir dire*, the trial court modified OUJI–CR–104 Alternate 2 to conform with a resentencing proceeding and this Court's directives in *Mayes*, 887 P.2d at 1297 and *Duvall v. State*, 825 P.2d 621, 630 (Okl.Cr.1991), *cert. denied*, 506 U.S. 878, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992). The trial court advised and asked fifty-six prospective jurors:

The law of the State of Oklahoma in this case permits only three possible punishments for a

person found guilty of murder in the first degree. Those punishments are life, life without parole, and death. Do you have any views or feelings about the death penalty or capital punishment that would prevent or substantially impair you from considering the three punishments in reaching your verdict? If selected as a juror and if you find that the law and the evidence in this case warrants the recommendation of the death penalty, could you vote to recommend that penalty?

S.Ct. 1149, 130 L.Ed.2d 1107 (1995). To withstand a challenge for cause concerning punishment issues, a venireperson must be willing to consider all the penalties provided by law and not be irrevocably committed to any one punishment option before the trial has begun. *Carter*, 879 P.2d at 1244.

■ In the instant case, prospective juror Fitzl stated unequivocally during individual *voir dire* that she had views about capital punishment that would prevent or substantially impair her ability to consider the three punishment options. Fitzl further stated that even if the law and the evidence warranted a recommendation of the death penalty, she could not recommend a death sentence. The trial court properly excused Fitzl for cause and Appellant has failed to show any abuse of discretion.[5]

■ Prospective juror Coker stated during individual *voir dire* that she had a problem with [the death penalty]. The trial court asked if Coker could recommend the death penalty if the law and the evidence warranted it. Coker stated that she could and had no reservations about imposing a death sentence if the evidence warranted it. During general *voir dire*, the prosecutor asked Coker if she could return a verdict of death. Coker said she would have "a little problem with that. . . ." A bench conference was held and the trial court made further inquiry. Coker then stated that she did not know whether she could impose the death penalty and that she had reservations about it. Before excusing Coker for cause the trial court asked:

> THE COURT: Even, as I asked you this morning, if the facts and circumstances justify it, you don't know whether you could recommend it or not; is that correct?
>
> JUROR COKER: Well, I thought at the time I could, but when I get right down to that—
>
> THE COURT: You feel that you can't; is that correct or incorrect?

JUROR COKER: In all honesty, I feel—

THE COURT: You can step down. You are excused.

■ When reviewing cases in which a prospective juror's answers are unclear or equivocal, this Court traditionally defers to the impressions of the trial court who can better assess whether a potential juror would be unable to fulfill his or her oath. *Scott v. State*, 891 P.2d 1283, 1289 (Okl.Cr.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 784, 133 L.Ed.2d 735 (1996); *Allen v. State*, 871 P.2d 79, 91 (Okl.Cr.), *cert. denied*, 513 U.S. 952, 115 S.Ct. 370, 130 L.Ed.2d 322 (1994). After considering the entire record surrounding Coker's exclusion, and giving appropriate deference to the trial court, we find that Coker's responses sufficiently demonstrated that her beliefs about capital punishment would substantially impair her ability to serve as a juror. Accordingly, the trial court did not err in removing Coker for cause.

■ Appellant also complains that the trial court erred when it refused to allow defense counsel to rehabilitate Fitzl and Coker. Because proper questions were asked by the trial court to determine the prospective jurors' fitness to hear this case, no error occurred when the trial court refused defense counsel's request to rehabilitate Fitzl and Coker. *Scott*, 891 P.2d at 1290.

■ Finally, Appellant argues he was denied a fair trial and impartial jury because the trial court did not conduct *voir dire* of prospective jurors individually about their feelings concerning the imposition of a sentence of either life or life without parole. Appellant relies on *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992) and argues the trial court improperly restricted inquiry into whether the prospective jurors would automatically impose the death penalty and fail to consider the punishment options of life and life without parole.

---

**5.** In his reply brief, Appellant claims the trial court erred in excusing prospective juror Driggars for cause. Driggars stated she did not believe in the death penalty, but stated that she could go along with it if she thought it was needed. Driggars unequivocally stated that she could not personally vote for the death penalty. The trial court did not abuse its discretion in excusing Driggars for cause.

Appellant cites the trial court's ruling during general *voir dire* in which the trial court advised defense counsel that it would not allow argument about the death penalty because the jurors had been death qualified. This ruling followed a colloquy between defense counsel and prospective juror Edgemon in which Edgemon said she could consider life and life without parole. Defense counsel then asked Edgemon if she believed the death penalty should be reserved for special instances. The State objected and the trial court told defense counsel he could *voir dire* the prospective jurors about aggravating and mitigating circumstances. The trial court then advised defense counsel that he could *voir dire* the prospective jurors about the death penalty just "not the way [counsel] asked the [last] question." Defense counsel then asked most of the prospective jurors if they could consider sentences of life or life without parole.[6] Because the trial court allowed defense counsel to life qualify prospective jurors, we find no *Morgan* error occurred.

## ISSUES RELATING TO PUNISHMENT

In his second proposition of error, Appellant argues the trial court misinterpreted 21 O.S.Supp.1993, § 701.10a (4)[7] and erroneously permitted the jury to consider inadmissible evidence in violation of his constitutional rights and the Oklahoma Evidence Code.[8] Appellant contends § 701.10a (4) requires trial courts to entertain objections that evidence was improperly admitted at the original trial and rule on those objections accordingly. Appellant claims the trial court in the instant case admitted evidence from Appellant's original trial without regard to whether or not it was properly admitted in the original trial. The State argues that any evidentiary issues raised on direct appeal of the original trial are barred by *res judicata* in the resentencing trial and that any evidentiary issues that could have been raised, but were not, are waived.

The trial court in the instant case ruled that it would admit any properly admitted evidence from Appellant's original trial. However, the trial court concluded that because this Court affirmed Appellant's conviction and remanded this case so a sentencing jury could consider life without parole,[9] that all evidence admitted in the original proceeding must have been properly admitted. The trial court at resentencing refused to consider constitutional or evidentiary objections to any evidence which had been admitted in Appellant's original trial.

Neither Oklahoma nor the four other states with statutes similar to section 701.10a (4)[10] have addressed whether this section allows defendants to challenge, in a subsequent resentencing trial, evidence admitted in the original trial based on allegations that such evidence was not properly admitted. Both parties agree that any evidentiary issue raised on direct appeal and ruled admissible by this Court is barred by *res judicata.* It is when an evidentiary issue is not contested at the original trial and not raised on direct appeal that requires this Court to define "properly admitted" as used in section 701.10a and to set out the role of the trial court in a resentencing proceeding.

**6.** Tr. at 154–55, 158, 162, 164–65, 173, 182, 193, 202, 210, 221, 231, 252, 257, 268, 278–79, 292.

**7.** Title 21 O.S.Supp.1993, § 701.10a (4) provides:

All exhibits and a transcript of all testimony and other evidence *properly admitted* in the prior trial and sentencing *shall* be admissible in the new sentencing proceeding; additional relevant evidence may be admitted including testimony of witnesses who testified at the previous trial. (emphasis added)

**8.** Appellant challenges the trial court's interpretation of 21 O.S.Supp.1993, § 701.10a in this proposition and challenges the court's admission of his custodial statements, his in-court testimony and State's exhibits 7, 9, 10, 12 and 13 in propo-

sitions III, IV and V. As Appellant notes in his brief, "[t]his proposition deals with the arbitrary decision of the trial court not the particular validity of the objections. These will be addressed in propositions below." Appellant's Brief at 32.

**9.** In *Humphrey,* 864 P.2d at 344–45, this Court addressed two issues. The Court found that the lack of an instruction on life without parole required resentencing and that manslaughter instructions were not warranted.

**10.** Ark.Code Ann. § 5–4–616(a)(4) (Michie 1987); N.M. Stat. Ann. § 31–20A–4 (E) (Michie 1978); Or.Rev.Stat. § 163.150(5)(d) (1995); and Utah Code Ann. § 76–3–207(5) (1995).

■ When this Court remands a case for resentencing pursuant to 21 O.S.Supp.1993, § 701.10a, the original sentencing proceeding is vacated. Because the parties are litigating anew the issue of punishment, the trial court must entertain objections to evidence from both parties. This necessarily includes objections that evidence was erroneously admitted in the original trial because the statute specifically limits the admission of evidence from the original trial to that evidence which was "properly admitted." 21 O.S.Supp.1993, § 701.10a (4). This Court is unwilling to hold that evidence erroneously admitted at the original trial and not reviewed on direct appeal is somehow transformed into properly admitted evidence through a waiver doctrine. As such we find the trial court erred in refusing to entertain objections to evidence based on section 701.10a.

Although Appellant claims that his custodial statements, his first stage testimony and State's exhibits 7, 9, 10, 12 and 13 were erroneously admitted based on the trial court's misinterpretation and reliance on 701.10a,[11] the only evidence we will review based on a section 701.10a challenge is that evidence which was actually admitted in Appellant's original trial. The record shows that only his custodial statements to Officer Robertson and Jail Administrator Plaster, his first stage testimony and State's exhibit 7 were admitted at Appellant's original trial. Therefore, we will review this evidence in the original trial to determine if it was "properly admitted." If such evidence was properly admitted, it is admissible by operation of law in the resentencing trial and we cannot entertain any other challenge to such evidence. 21 O.S.Supp.1993, § 701.10a (4).

■ First, Appellant claims his custodial statements to Officer Robertson and Jail Administrator Plaster were involuntary and that he was denied due process because the trial court failed to hold a *Jackson v. Denno*[12] hearing to determine if the statements were voluntarily made. Appellant's custodial statements were admitted in the original trial during second stage to support the "continuing threat" aggravator. A review of the record from Appellant's original trial shows that Appellant never contested the voluntariness of the statements or requested a *Jackson v. Denno* hearing. A defendant does not have the right to a *Jackson v. Denno* hearing as to the voluntariness of his inculpatory custodial statements where he does not object to the admission of the statements. *Wainwright v. Sykes*, 433 U.S. 72, 86, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Because Appellant did not object to the voluntariness of his custodial statements to Robertson or Plaster at his original trial, the trial court properly admitted the statements without a *Jackson v. Denno* hearing. *See Wainwright*, 433 U.S. at 86, 97 S.Ct. at 2506. Because the custodial statements were properly admitted in Appellant's original trial, they were admissible in Appellant's resentencing trial and no error occurred in their admission.

Next, Appellant complains that his first stage testimony violated his right to remain silent because it was induced by misconduct of the State. *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). Appellant claims he testified in his original trial to put forth sufficient evidence to warrant an instruction on heat of passion manslaughter and to rebut the State's use of inadmissible evidence.

■ The general rule is that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings. *Harrison*, 392 U.S. at 222, 88 S.Ct. at 2010. "A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him." *Id.*

11. These are the allegations of error raised in Propositions III, IV and V.

12. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). "*Jackson* requires a separate hearing by the trial judge concerning the admissibility of a defendant's confession once the voluntariness of that confession has been brought into question." *Smith v. State*, 736 P.2d 531, 533 (Okl.Cr.1987).

■ Appellant contends he took the stand in the first stage of his original trial to rebut the State's use of inadmissible evidence. Appellant does not specify what the inadmissible evidence consisted of, but refers to the involuntariness of his custodial statements. We must presume that Appellant is referring to his custodial statements to Robertson and Plaster since the other statements were made after Appellant's first trial. As stated above, the custodial statements to Robertson and Plaster were properly admitted in Appellant's original trial. Further, Appellant did not testify in first stage to rebut Robertson's and Plaster's testimony because they did not testify until second stage. We find this record does not support Appellant's assertion that he testified to overcome the impact of illegally obtained statements, but rather, shows that Appellant testified to put forth evidence to support an instruction on manslaughter. Because Appellant's first stage testimony was "properly admitted" at his original trial, no error occurred in the admission of Appellant's first-stage testimony at his resentencing trial.

Lastly, Appellant complains that State's exhibit 7 was improperly admitted in his original trial because it is hearsay. State's exhibit 7 was a list of Appellant's prior law enforcement contacts with the Henryetta Police Department. It contained three columns listing, respectively, a date, an offense, and a first initial and last name of the officer with whom the contact was had. The list was prepared by Henryetta Police Officer Eddie Hunt and was admitted in the second stage of Appellant's original trial. At the original trial, defense counsel objected to State's exhibit 7,[13] stating the defense "objects to State's Exhibit 2 except for those items that resulted in a conviction of a felony."[14] The trial court overruled the objection.

■ A review of State's Exhibit 7 shows the trial court erred in admitting it in the original trial because it was hearsay which did not fall within the business record exception. See 12 O.S.1991, § 2803(6). Because State's Exhibit 7 was not "properly

admitted" in Appellant's original trial, the trial court at Appellant's resentencing trial should have entertained counsel's objection and sustained it. We must now determine if Appellant was prejudiced by the improper admission of State's exhibit 7 in his resentencing trial since its admission violated his Confrontation Clause rights. We note that violation of the Confrontation Clause through admission of hearsay does not necessitate reversal if this Court is satisfied the error was harmless beyond a reasonable doubt and did not contribute to the verdict. *Omalza v. State*, 911 P.2d 286, 299 (Okl.Cr.1995). We find the error in this case was harmless since the exhibit was not discussed during Hunt's testimony and was not the primary evidence relied on by the State to show Appellant constituted a continuing threat to society. As discussed in Proposition VIII, *infra*, the State introduced sufficient other evidence to prove its continuing threat contention.

■ We must now review Appellant's remaining claims concerning State's exhibits 9, 10, 12 and 13 which were not admitted in Appellant's original trial. Appellant argues the trial court in his resentencing trial erred in failing to determine the voluntariness of Appellant's confessions to two prison infractions contained in two DOC offense/investigation reports admitted as State's exhibits 9 and 10. Defense counsel objected citing the Fifth Amendment. However, counsel neither contested the voluntariness of the confessions nor requested a *Jackson v. Denno* hearing. Accordingly, the trial court properly admitted them without a hearing. *Wainwright*, 433 U.S. at 86, 97 S.Ct. at 2506.

■ Appellant claims the trial court erred in admitting State's exhibits 9, 10, 12 and 13 because they were inadmissible hearsay. He maintains their admission violated his right of confrontation. State's exhibit 9 contained DOC documents concerning an incident in which Appellant was accused of and found guilty in a disciplinary hearing of menacing another inmate. State's exhibit 10 contained DOC documents concerning an incident in which Appellant was accused of, and

---

**13.** At the original trial, State's Exhibit 7 was numbered State's Exhibit 2.

**14.** Original Tr. 615.

plead guilty in a disciplinary proceeding to, possession/ manufacture of contraband. Again the trial court erred in admitting State's exhibits 9 and 10 because they do not fall within the public records exception to the hearsay rule since they are investigative reports by law enforcement personnel. 12 O.S. 1991, § 2803(8). However, the error was harmless beyond a reasonable doubt in this case because the State presented as witnesses James Morgan and Jeff McMurtry, the DOC officers who actually witnessed the events alleged in State's exhibits 9 and 10, who testified about their personal knowledge of these incidents to prove the State's continuing threat contention.

Lastly, Appellant argues the trial court erred in admitting State's exhibits 12, Appellant's discharge summary from Eastern State Hospital and 13, an unsigned psychological evaluation performed Sept. 19, 1987. At the resentencing trial the State offered the exhibits during the cross-examination of Appellant's psychological expert, Dr. Nelda Ferguson. Defense counsel objected stating the documents had not been properly sponsored or identified. Appellant now contends these reports constitute inadmissible hearsay and that these reports were not properly sponsored, identified or authenticated.

In *Ake v. State,* 778 P.2d 460, 467–68 (Okl. Cr.1989), this Court found that the admission of facts or data relied upon by an expert was admissible as long as it was the type relied on by experts in the field. *See also* 12 O.S.1991, §§ 2703 and 2705. However, the Court concluded that the admission of such evidence was within the discretion of the trial court and, if admitted, should be accompanied by a limiting jury instruction to clarify that the evidence could only be used to evaluate the credibility of the testifying expert's opinion. *Ake,* 778 P.2d at 467.

 In the instant case, the State certainly had the right to cross-examine Appellant's expert concerning the basis of her opinion. In so doing, the State questioned Ferguson about the records she relied on in reaching her opinion. The State quoted from several reports concerning Appellant to de-

termine if Ferguson agreed or disagreed with other evaluations. In an attempt to impeach Ferguson, the State moved to admit State's exhibits 12 and 13 because she had reviewed them in reaching her opinion. Because this is the type of data relied on by other psychological experts in the field, Appellant cannot show that the trial court abused its discretion in admitting State's exhibits 12 and 13.

 Appellant is correct that no limiting instruction was administered concerning the use of this evidence. However, because Appellant failed to request such an instruction, we will review for plain error. *Hill v. State,* 898 P.2d 155, 163 (Okl.Cr.1995). A review of the instructions given in this case shows the trial court administered OUJI–CR–907 concerning the credibility of witnesses generally and OUJI–CR–843 concerning the credibility of expert witnesses. Although we charge trial courts with the duty to administer a limiting instruction, we find the failure to administer an instruction limiting the use of State's exhibits 12 and 13 does not amount to plain error in this case.

In his seventh proposition of error,[15] Appellant argues the evidence was insufficient to prove beyond a reasonable doubt that he was serving a sentence of imprisonment at the time the homicide occurred. 21 O.S.1991, § 701.12(6). He claims this aggravator is confined to those cases where the murderer is actually imprisoned at the time the homicide occurs. He contends that because he was participating in the "house arrest" program rather than serving his sentence in prison, applying this aggravating circumstance in this case would render it unconstitutionally vague and overbroad.

 This Court has consistently rejected claims that this aggravator is limited to cases where the murder occurs in a prison facility. *Duckett v. State,* 919 P.2d 7, 25–26 (Okl.Cr. 1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 991, 136 L.Ed.2d 872 (1997); *Cooper v. State,* 889 P.2d 293, 315–16 (Okl.Cr.1995), *reversed on other grounds,* —— U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996); *McCracken v. State,* 887 P.2d 323, 331 (Okl.Cr.1994), *cert.*

**15.** Proposition VI has been withdrawn. *See* Appellant's Reply Brief at 17.

*denied,* —— U.S. ——, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995). In *Duckett,* this Court noted that the aggravator had been upheld when the killing occurred within an Oklahoma prison facility, when the murder was committed by an inmate who had escaped and when the killing was committed by an inmate participating in the Pre-parole Conditional Supervision Program. *Duckett,* 919 P.2d at 25–26. Because inmates participating in the house arrest or pre-parole programs remain within the custody of the Department of Corrections and continue to serve their sentences while participating in them, we find no reason the aggravator should not also apply to inmates who murder while serving their sentence in the house arrest program.

We must now review the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the facts necessary to support this aggravating circumstance beyond a reasonable doubt. *Salazar v. State,* 919 P.2d 1120, 1123 (Okl.Cr.1996); *Malone v. State,* 876 P.2d 707, 718 (Okl.Cr.1994). In the instant case, Jim Raybun, a records keeper for the Department of Corrections, testified Appellant was incarcerated in the Oklahoma Department of Corrections in the house arrest program at the time of the murder. Appellant was placed on house arrest on September 18, 1986. Raybun testified that under state law,[16] the Department of Corrections could place an incarcerated offender at home under supervision to serve out the remainder of his or her sentence. He further testified that a person on house arrest was considered to be within the custody of the Department of Corrections and to be serving a sentence of imprisonment. Because this evidence shows that Appellant was serving his sentence under the supervision of the Department of Corrections in the house arrest program at the time of the murder, we find the State proved beyond a reasonable doubt that Appellant murdered Phipps while serving a sentence of imprisonment on con-

viction of a felony. *McCracken,* 887 P.2d at 331. Therefore, this proposition is denied.

In his eighth proposition of error, Appellant claims the aggravating circumstance "continuing threat to society"[17] is unconstitutionally vague and overly broad on its face and as construed by this Court. Appellant further claims the evidence was insufficient to prove beyond a reasonable doubt that he constituted a continuing threat to society.

This Court has consistently upheld the constitutionality of the "continuing threat to society" aggravating circumstance and rejected claims that the aggravating circumstance is unconstitutionally vague on its face or as construed. *Duckett,* 919 P.2d at 26; *Knighton v. State,* 912 P.2d 878, 895 (Okl. Cr.), *cert. denied,* —— U.S. ——, 117 S.Ct. 120, 136 L.Ed.2d 71 (1996); *Richie v. State,* 908 P.2d 268, 278 (Okl.Cr.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 111, 136 L.Ed.2d 64 (1996); *Malone,* 876 P.2d at 715–16. We find the law is settled and Appellant has failed to give this Court any reason to revisit this issue now.

Next, we must determine whether the State proved beyond a reasonable doubt that there exists a probability that Appellant would constitute a continuing threat to society. "When the State alleges the continuing threat aggravating circumstance, it is required to present proof that the defendant's behavior presents a threat to society and that [the] threat will continue in the future." *Perry v. State,* 893 P.2d 521, 536 (Okl.Cr. 1995). "The aggravator is not established unless the evidence at trial supports a finding that the defendant will continue to present a threat to society after sentencing." *Malone,* 876 P.2d at 717. To prove this aggravator, "the State [must] present sufficient evidence concerning prior convictions or unadjudicated crimes to show a pattern of criminal conduct that will likely continue in the future to support its 'continuing threat' contention." *Id.*

In the instant case, the State introduced evidence that Appellant had physically abused Phipps prior to the murder,[18] that

---

**16.** 57 O.S.Supp.1985, § 510.2.

**17.** 21 O.S.1991, § 701.12(7).

**18.** Tr. at 389, 705, 731.

Appellant had assaulted a police officer in 1985 some two years before Phipps' murder in which Appellant broke the officer's nose and tried to take the officer's service revolver,[19] that Appellant threatened an officer with a butcher knife in 1986 when the officer responded to a disturbing the peace complaint,[20] that Appellant assaulted Jerry Liddell and J.R. Fields prior to the murder,[21] that Appellant resisted arrest and made statements after stabbing Phipps that he wanted to "finish the job,"[22] that Appellant stabbed Robert Lawrence in the back with a screwdriver,[23] that Appellant menaced another inmate in 1988,[24] and that in 1993 Appellant possessed a disposable razor with the blade removed and melted into the handle claiming he would cut his roommate if one of them were not moved.[25] We find this evidence sufficiently shows a pattern of criminal conduct that will likely continue in the future. Accordingly, this proposition is denied.

In his ninth proposition of error, Appellant claims he was denied competent trial counsel at his resentencing trial in violation of the Sixth Amendment. Appellant argues trial counsel failed to fully investigate and present compelling evidence that served to mitigate punishment and to rebut the State's claim that Appellant constituted a continuing threat to society. Appellant also claims counsel failed to adequately prepare for the presentation of witnesses when he failed to interview both state and defense witnesses prior to their testimony.

Pursuant to Rule 3.11(B)(3)(b), *Rules of the Court of Criminal Appeals*, 22 O.S.Supp. 1995, Ch. 18, App., Appellant applied for an evidentiary hearing and to supplement the record. Appellant was granted leave to supplement the record with five affidavits in support of his claim that counsel was deficient when he failed to utilize or introduce

evidence that four months prior to his resentencing trial Appellant rendered aid to an injured jailer after the jailer was assaulted by another inmate. This Court remanded the matter for an evidentiary hearing after finding a strong possibility that trial counsel was ineffective for failing to introduce this complained-of evidence. The trial court held an evidentiary hearing and submitted written findings of fact and conclusions of law concerning the availability of the evidence, the effect of the evidence on the trial proceedings, whether the failure to use the evidence was trial strategy, and if the evidence was cumulative or would have affected the verdict. The trial court concluded that the evidence of Appellant's aid to the injured jailer and the psychological evidence introduced at the evidentiary hearing would not have affected the sentence rendered and that counsel was not ineffective.[26]

This Court will review the trial court's findings and give them strong deference if supported by the record, but we shall determine the ultimate issue whether trial counsel was ineffective. Rule 3.11(B)(3)(b)(iv), *Rules of the Court of Criminal Appeals*, 22 O.S.Supp.1995, Ch. 18, App. In its cursory findings, the trial court concluded that the evidence of Appellant's aid to the injured jailer was available for trial, that the evidence was conflicting and that the evidence would not have "impacted" the verdict. The trial court further found that the psychological evidence introduced at the evidentiary hearing was available for trial and would not have "impacted" the verdict because the evidence was adequately presented to the jury at the resentencing trial.

To prevail on a claim of ineffective assistance of counsel, Appellant must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable

---

19. Tr. at 519.

20. Tr. at 520.

21. Tr. at 427, 428.

22. Tr. at 488, 489, 503, 504.

23. Tr. at 403, 544, 700.

24. Tr. at 641–42.

25. Tr. at 648–49.

26. After the trial court filed its Findings of Fact and Conclusions of Law, Appellant filed a supplemental brief in which he argued that the trial court's findings of fact were not supported by the record and that such findings were contrary to the law.

professional assistance by showing: [1] that trial counsel's performance was deficient; and [2] that he was prejudiced by the deficient performance. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See also Spears,* 900 P.2d at 445. To establish prejudice, Appellant must show a reasonable probability that, but for trial counsel's errors, the result of his sentencing would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. This Court need not determine whether trial counsel's performance was deficient if Appellant cannot show he was prejudiced by trial counsel's failure to introduce evidence of Appellant's aid to the injured jailer or counsel's omission of the additional psychological evidence.

 "The fact that a defense attorney could have investigated an issue more thoroughly does not, in and of itself, constitute ineffective assistance." *Fontenot v. State,* 881 P.2d 69, 86 (Okl.Cr.1994). We are bewildered by counsel's efforts or lack thereof to present evidence of Appellant's aid to an injured jailer and we are appalled at counsel's failure to interview witnesses prior to trial, especially the psychological expert. However, we have reviewed the evidence from the evidentiary hearing very carefully and find that Appellant cannot show that he was prejudiced by counsel's performance. We find that the evidence of Appellant's aid to the injured jailer and the additional and more detailed psychological evidence presented at the evidentiary hearing would not have affected the sentence rendered. We so find because the State's case in aggravation was very strong and because counsel presented the majority of the psychological evidence in mitigation. Accordingly, this proposition is denied.

In his final proposition of error, Appellant claims the accumulation of errors discussed above denied him a fair trial. Where no individual error occurred at the resentencing trial, there can be no accumulation of error necessitating reversal, modification or resentencing. As discussed above, we find no error that warrants relief. Therefore, we find Appellant's resentencing trial, although imperfect, was fair and impartial and that none of Appellant's substantial rights were prejudiced. *Stout v. State,* 693 P.2d 617, 628 (Okl.Cr.1984). Accordingly this proposition is denied.

## MANDATORY SENTENCE REVIEW

 Pursuant to 21 O.S.1991, § 701.13(C), we must now determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and (2) whether the evidence supports the jury's finding of aggravating circumstances as enumerated in 21 O.S.1991, § 701.12. As noted above sufficient evidence existed to support the aggravating circumstances alleged by the State: that Appellant had committed a prior violent felony; that Appellant was serving a sentence of imprisonment on conviction of a felony at the time of the murder; and that Appellant constitutes a continuing threat to society. In mitigation Appellant presented evidence of his troubled youth, his alcoholism, his psychological problems and loving relationships with his family. After carefully weighing the aggravating circumstances and all mitigating evidence, we find the aggravating circumstances outweigh the mitigating evidence and that the sentence of death is factually substantiated and appropriate. We further find no error which warrants reversal or modification. Accordingly, the Judgment and Sentence of the trial court is **AFFIRMED.**

CHAPEL, P.J., and LANE and JOHNSON, JJ., concur.

LUMPKIN, J., concurs in result.

LUMPKIN, Judge, concurs in result:

I agree the sentence in this case should be affirmed. But because the opinion reviews material which it should not, I can only concur in result.

Procedurally, here's what has happened: Appellant appealed both the judgment of guilt and sentence of death to this Court. This Court affirmed the judgment of guilt, but vacated the sentence and remanded for

resentencing in an opinion handed down September 27, 1993 (as corrected October 4, 1993). *Humphrey v. State*, 864 P.2d 343 (Okl.Cr.1993). On October 26, 1993, Appellant filed an Application for Rehearing. That application was denied on December 3, 1993. On December 21, 1993, Appellee, the State, filed a motion to recall the mandate. Mandate was issued January 5, 1994. On March 15, 1994, Appellee filed a Petition for Writ of Certiorari with the United States Supreme Court. That Petition was denied on May 2, 1994. *Oklahoma v. Humphreys*, 511 U.S. 1077, 114 S.Ct. 1663, 128 L.Ed.2d 379 (1994).

I set out this procedural history to make a point: Appellant had the opportunity to seek Supreme Court review of the guilt proceedings after the judgment of this Court affirming his guilt was handed down in 1993. He did not do so. Now, by performing a review of evidence in the first stage in this appeal dealing with the punishment phase, the Court is allowing a collateral review of guilt-stage evidence through the back door; a procedure that does not contribute to finality.[27] Such a procedure is unfair to the opposing party, who in fact *did* seek certiorari review in a timely manner.

Issues pertaining to the guilt stage were decided in 1993. As a result, they should either be *res judicata* or waived. This Court would not hesitate to hold these very same issues waived had this come up on post-conviction. 22 O.S.Supp.1995, § 1089(C). The same application of the rule of law should apply on review of a resentencing trial. In effect, that is the ultimate result of the Court's analysis and decision in this case

as it relates to some of the evidence "properly admitted" in the first trial as admissible in the resentencing trial, i.e. no objection at first trial to custodial statements, waived issue, then properly admitted. Rather than confusing the issue by language which seems to review evidence from a stage of trial that is no longer at issue and creating questions in the minds of trial judges as to how they should properly handle objections to evidence on resentencing proceedings, we should adopt and apply res judicata and waiver in a clear and concise manner.

Accordingly, I can only concur in result.

---

**27.** A person desiring to appeal a criminal judgment "is timely" when it is filed within 90 days after the state court enters judgment. Sup.Ct. R. 13(1). Furthermore, the Clerk of the Supreme court will not file a petition "that is jurisdictionally out of time." Sup.Ct. R. 13(2). The Supreme Court promulgates rules for applications for writs of certiorari from state courts pursuant to 28 U.S.C. 2101(d). Although the rule states the Clerk shall not file a petition which is "jurisdictionally" out of time, the Court has apparently held that the 90–day requirement is not jurisdictional, and that the "procedural rules adopted by the Court for the orderly transaction of its business are not jurisdictional and can be relaxed by the Court in the exercise of its discretion when the ends of justice so require." *Schacht v. United States*, 398 U.S. 58, 64, 90 S.Ct. 1555, 1559,

26 L.Ed.2d 44 (1970). *See also Taglianetti v. United States*, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969). Despite this pronouncement, there are far more cases where the Supreme Court refuses review based on an untimely filing than there are cases where they accept. *See Shapiro v. Doe*, 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677 (1970); *see also Cheley v. Parham*, 404 U.S. 878, 92 S.Ct. 219, 30 L.Ed.2d 159 (1971); *Beaufort Transfer Co. v. United States*, 404 U.S. 806, 92 S.Ct. 66, 30 L.Ed.2d 39 (1971); *Stein v. Luken*, 396 U.S. 555, 90 S.Ct. 756, 24 L.Ed.2d 747 (1970); *United States v. Cotton*, 397 U.S. 45, 90 S.Ct. 816 25 L.Ed.2d 43 (1970); *Pittsburgh Towing Co. v. Mississippi Val. Barge Line Co.*, 385 U.S. 32, 87 S.Ct. 195, 17 L.Ed.2d 31 (1966).