1999 OK CR 8

**Benny Dwight JONES, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–96–1267.

Court of Criminal Appeals of Oklahoma.

Feb. 19, 1999.

Roger Hilfiger, Cook, Hilfiger & Pierce, Muskogee, for Defendant at trial.

Thomas C. Giulioli, District Attorney, O.R. Barris, III, Assistant District Attorney, Okmulgee, for the State at trial.

Patti Palmer, Palmer & Lamirand, Pawhuska, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Jennifer B. Miller, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

### *OPINION*

CHAPEL, Presiding Judge:

¶ 1 Benny Dwight Jones and co-defendant Richard Eugene Hammon were tried by jury for the crime of Murder in the First Degree, in violation of 21 O.S.1991, § 701.7, and other charges, in the District Court of Okmulgee County, Case No. CRF–90–144. This Court affirmed the murder convictions, remanded with instructions to dismiss the lesser charges, and remanded the case for resentencing because trial attorneys were prohibited from determining whether jurors would automatically impose a capital sentence for first degree murder.[1] On remand, the cases were severed, and Jones's resentencing trial was held in September 1996. The jury found he knowingly created a great risk of death, committed the murder for the purposes of avoiding or preventing a lawful arrest or prosecution, and posed a continuing threat to society. Once again the jury recommended the death penalty. Jones appeals from this sentence and raises sixteen propositions of error.

■ ¶ 2 In Proposition II Jones claims the trial court's method of jury selection was not designed to determine whether a potential juror would automatically impose the death penalty. He argues this method deprived him of due process. This case was remanded because the original trial court refused to allow defense counsel to ask prospective jurors whether they would automatically impose the death penalty.[2] "A defendant on trial for his life must be permitted on voir dire to ascertain whether his prospective jurors function under the belief that upon conviction the death penalty should automatically be imposed."[3] Upon remand the case was assigned to a different trial court for resentencing. Before trial, counsel submitted proposed questions by motion to the trial court, including, "Do you believe that the death penalty is ordinarily the only appropriate punishment for the crime of Murder in the First Degree?"[4] At the July 23 hearing, the trial court denied the motion for voir dire on the death penalty and declined to ask any of counsel's proposed questions. The trial court determined to individually voir dire each panel member on the death penalty before any general questioning and asked the following questions:

> The law of the State of Oklahoma in this case permits only three possible punishments for a person found guilty of murder in the first degree. Those punishments are life, life without parole, and death. Do you have any views or feelings about the death penalty or capital punishment that would prevent or substantially impair you from considering all three punishments in reaching your verdict? If you are selected as a juror and find that the law and the evidence in this case warrants [sic] the recommendation of the death penalty, could you vote for that penalty? [5]

¶ 3 These questions, of course, do not inquire whether prospective jurors would automatically impose the death penalty. During general voir dire, counsel asked, "Do you

---

1. *Jones v. State*, 1995 OK CR 34, 899 P.2d 635, *cert. denied*, 517 U.S. 1122, 116 S.Ct. 1357, 134 L.Ed.2d 524 (1996)(*Jones 1* ). On June 28, 1990, Benny Jones and Richard Hammon robbed an automobile detailing and parts store in Okmulgee. In the process they shot and killed the owner, Eugene Slape. They were tried together in 1991, convicted of first degree murder and a variety of lesser charges, and sentenced to terms of imprisonment and death. Further facts are found in *Jones 1*.

2. *Jones*, 899 P.2d at 647.

3. *Id.; Morgan v. Illinois*, 504 U.S. 719, 735–36, 112 S.Ct. 2222, 2233, 119 L.Ed.2d 492 (1992).

4. Motion for Voir Dire on the Death Penalty. (O.R. at 729).

5. These questions were not included in the original record. They are found at Trial Transcript 1 14–15, 16, 17, 18, 19, 21, 22, 24, 26, 27, 28, 29, 30, 31–32, 33, 34, 35, 36, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47, 48–49, 49, 50–51, 52, 52–53, 54, 55, 57, 60, 61, 62, 63, 64, 66, 67, 68, 70, 71, 72, 73, 74, 75, 76, 77, 78, [81, 82 follow up to 15, 16], 86–87, 90, 92, 93, 94. 95, 96, 97, 98, 101, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 115, 116, 118, 121, 122–23, 124, 125, 126, 127, 128, 130, 132.

think that the death penalty ought to be imposed for every particular class of crime, like a murder, for every murder?"[6] The trial court sustained the State's objection to this question and admonished both sides,

> I have made inquiry into the death penalty and their ability to do it yesterday, and I feel properly so. I hope so. I really don't think we ought to delve into that any further.... If you ask him with relation to the aggravating circumstances that is okay, but not as to any other—[7]

The trial court thus both refused to ask jurors whether they would automatically impose the death penalty and refused to allow counsel to ask the same question. This decision was error.

■ ¶ 4 Counsel did explore jurors' willingness to consider the evidence and impose all three penalties. Before the exchange above, counsel asked without objection, "Do you feel that because he admits to the crime ... that he should be given the death penalty without any other consideration?"[8] Counsel asked four jurors whether they could consider Jones's mitigating evidence although he admitted committing the crimes.[9] Counsel also asked: whether jurors would consider mitigating circumstances even if they found that aggravating circumstances existed;[10] whether jurors could listen to mitigating evidence,[11] follow the court's instructions[12] and make their own decisions about aggravating and mitigating evidence;[13] and whether they could consider Jones's evidence including his

life since his conviction.[14] Only the first of these questions goes to a juror's inclination to impose the death penalty automatically; the others go, if anything, to the juror's willingness to consider *not* imposing the death penalty. The fact that counsel succeeded in asking this question of one juror, but was prevented from similarly questioning any other panel member, does not cure this error.

¶ 5 The State suggests the trial court's voir dire, along with the questions regarding mitigating circumstances, were sufficient to determine whether jurors would automatically impose the death penalty. The State conflates two very different lines of questioning. It is important that voir dire questions determine whether prospective jurors will consider all three punishments equally. However, asking that question will not satisfy the specific inquiry whether a juror would automatically impose a sentence of death.[15] The State inexplicably suggests this case resembles *Humphreys v. State.*[16] In *Humphreys* the trial court asked prospective jurors the same questions as were asked here but allowed defense counsel to question regarding whether jurors would consider sentences of life or life without parole. The issue in *Humphreys* was not whether jurors would automatically impose the death penalty but whether they could consider all three punishments; trial counsel did not request the former question and was allowed to inquire specifically about the latter, so there was no error under *Mor-*

6. Trial Transcript 1 at 249.

7. *Id.*

8. Trial Transcript 1 at 190. The State's brief suggests counsel also asked this question six other times. This is not the case. The correct substance of questions and transcript cites are set forth below.

9. Trial Transcript 1 at 182–83, 185, 250; see also Trial Transcript 2 at 276 (questioning whether juror feels the death penalty ought to be invoked because Jones admitted to the crimes).

10. Trial Transcript 1 at 180, 187–89, 229.

11. Trial Transcript 1 at 184.

12. Trial Transcript 2 at 292, 297 (mitigating circumstances do not require proof beyond a reasonable doubt), 315.

13. Trial Transcript 2 at 285.

14. Trial Transcript 1 at 182–183; Trial Transcript 2 at 336–37.

15. *Morgan,* 504 U.S. at 732–34, 112 S.Ct. at 2232 (jurors were told of possible punishments, asked whether they *could not* impose the death penalty, and asked generally whether they could be fair and impartial and follow the law; these general questions of fairness do not determine whether a juror would automatically impose a death sentence).

16. *Humphreys v. State,* 1997 OK CR 59, 947 P.2d 565.

gan.[17] Here, jurors were informed of all three punishments and asked whether they could consider all three; in that respect, the trial court followed this Court's directions in *Jones 1*.[18] However, this Court, citing the United States Supreme Court, explicitly held that, upon request, Jones *was entitled* to ask whether prospective jurors would automatically impose the death penalty.[19] It was this request the trial court inexplicably refused.

¶ 6 The State's argument hinges on the response of one juror. When the trial court questioned prospective juror Smith, he replied he only believed in the death penalty and would not consider any other option. The State contends that, since the trial court's questions identified one juror automatically opposed to the death penalty, they must have been sufficient. This argument would have more force were it not for prospective jurors Garrison and Franks. During individual voir dire, both jurors said in response to the trial court's questions that they had no views on the death penalty that would impair their deliberations and could consider all three punishments. In general voir dire, Garrison stated because Jones admitted to the crimes she "probably [had] my mind made up," probably did feel that he should receive the death penalty, and would "possibly not" be a fair juror.[20] Although after further questioning Garrison confirmed that she could consider all three penalties and might change her mind, it is clear that the trial court's questions were not sufficient to ascertain this juror's initial bias towards the death penalty. During general voir dire, Franks stated, "No, I'm not for death." [21] Franks admitted she had said she could consider all three penalties and had no views that would prevent her from such consideration. She insisted nothing had changed since her individual questioning and that she

had never been for the death penalty. Again, the trial court's questions were clearly not sufficient to discover this juror's bias. This Court cannot and should not speculate on whether other jurors harbored similar reservations or misunderstandings in individual voir dire that were not brought out in later questioning.

¶ 7 It is clear from the record that, despite Smith's answer, the trial court's questions alone were not sufficient to discover whether jurors would automatically impose the death penalty. Questions counsel was permitted to ask also were not sufficient to determine this important issue. It is unfortunate that we are compelled to remand a capital case a second time on the same issue. However, the trial court neither followed this Court's explicit instructions nor permitted counsel to do so. Once again, Jones was sentenced by a jury without knowing whether its members, or members of the prospective jury panel, would automatically impose a sentence of death. This result is constitutionally unacceptable. This proposition is granted, and the case is remanded for resentencing.

¶ 8 In Proposition V Jones raises issues regarding the admission of victim impact evidence. Without deciding the merits of that claim, we note that the case was jeopardized by severe irregularities and errors in that evidence. We encourage the trial court on resentencing to hold an *in camera* hearing, before victim impact evidence is introduced or mentioned in opening statements, in order to determine the admissibility of the evidence and decide whether the evidence is more prejudicial than probative, keeping in mind this Court's published guidelines regarding victim impact evidence.[22] We also encourage the trial court to instruct the jury using the complete instructions provided in *Oklahoma*

---

17. *Id.* at 571–72.

18. *Jones*, 899 P.2d at 646–647 (trial court gave no introductory instructions, failed to advise potential jurors of other penalties, and asked general questions regarding fairness and impartiality).

19. *Jones*, 899 P.2d at 647 (emphasis added).

20. Trial Transcript 1 at 185.

21. *Id.* at 216.

22. *Conover v. State*, 1997 OK CR 6, 933 P.2d 904, 921; *Ledbetter v. State*, 1997 OK CR 5, 933 P.2d 880, 891; *Cargle v. State*, 1995 OK CR 77, 909 P.2d 806, 828, *cert. denied*, 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996); *Mitchell v. State*, 1994 OK CR 70, 884 P.2d 1186, 1204–05, *cert. denied*, 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995).

*Uniform Jury Instructions—Criminal (2nd).*[23]

¶ 9 Given the reversible error in Proposition II, we do not address Jones's remaining propositions. We find that Jones's sentence of death is **REVERSED** and this case is **REMANDED** to the District Court to conduct a new sentencing hearing.

STRUBHAR, V.P.J., and LANE, J., concur.

JOHNSON, J., specially concurs.

LUMPKIN, J., dissents.

LUMPKIN, Judge: dissents.

¶ 1 With all due respect to my colleagues, the record on appeal in this case simply does not support the result the majority reaches, i.e. to reverse and remand this matter for a third sentencing proceeding. The Court's analysis is weak. The opinion ignores established precedent and frequently employs twisted logic in reaching a decision which is clearly wrong. Therefore, I dissent.

¶ 2 In *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), the United States Supreme Court held that those jurors who will automatically vote for the death penalty "will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do." *Morgan,* 504 U.S. at 729, 112 S.Ct. at 2229. Therefore, a defendant may challenge for cause any such juror. *Id.* The *Morgan* decision requires that jurors be willing to go into the trial with no preconceived notions of either stance, death or life. *Carter v. State,* 1994 OK CR 49, 879 P.2d 1234, 1244.

¶ 3 Essentially, that is the same standard applied by this Court. *Id.* We have repeatedly held that a venireperson is only required to be willing to consider all the penalties provided by law and not be irrevocably committed before the trial has begun. *Hain v. State,* 1996 OK CR 26, 919 P.2d 1130, 1138; *Neill v. State,* 1994 OK CR 69, 896 P.2d 537, 549; *Carter,* 879 P.2d at 1244; *Duvall v. State,* 1991 OK CR 64, 825 P.2d 621, 630; *Banks v. State,* 1985 OK CR 60, 701 P.2d 418, 421–422; *Davis v. State,* 1983 OK CR 57, 665 P.2d 1186, 1190. In applying that standard, we look to the entirety of the juror's *voir dire* examination to determine if the trial court properly excused the juror for cause. *Castro v. State,* 844 P.2d 159, 166 (Okl.Cr.1992); *Davis,* 665 P.2d at 1194. As the trial court personally observes the jurors and their responses, this Court will not disturb its decision absent an abuse of discretion. *Rojem v. State,* 753 P.2d 359, 363 (Okl.Cr.1988).

¶ 4 It is true that the trial court rejected a list of seven death penalty questions proposed by defendant in a pre-trial motion (O.R. at 729). However, a review of those questions indicates that they were redundant. Although worded differently, each question essentially sought the same information, i.e. whether the proposed juror was irrevocably committed to imposing the death penalty when a defendant was guilty of first degree murder.

¶ 5 Rather than submit this redundant list to the jury panel, the trial court decided to conduct its own *voir dire* regarding the death penalty. Thus, the trial court asked each potential juror the following questions:

> The law of the State of Oklahoma in this case permits only three possible punishments for a person found guilty of murder in the first degree. Those punishments are life, life without parole, and death. Do you have any views or feelings about the death penalty or capital punishment that would prevent or substantially impair you from considering all three punishments in reaching your verdict? If you are selected as a juror and find that the law and the evidence in this case warrants [sic] the recommendation of the death penalty, could you vote for that penalty.

---

23. Jones correctly notes in Proposition XII that the trial court unnecessarily altered OUJI (2nd) 4–80, regarding imposition of a sentence of less than death, even though the instruction accurately stated the law and there had been no intervening change in statute or case law between the promulgation of the instructions and trial. 12 O.S.Supp.1997, § 577.3; *Order Adopting Amendments to Oklahoma Uniform Jury Instructions—Criminal,* No. CCAD–96–2 (April 4, 1996).

This language should be familiar to the Court. We addressed identical language in *Humphreys v. State*, 1997 OK CR 59, 947 P.2d 565 and did not find it problematic.[1] *See Humphreys*, 947 P.2d at 570 n. 4 ("During *voir dire*, the trial court modified OUJI–CR–104 Alternate 2 to conform with a resentencing proceeding"). In addition, while it would have been better to use the instruction as approved by this Court in the uniform instructions, it substantially complies with Instruction No. 1–5(12) Alternate 2 (Death Penalty), of the Oklahoma Uniform Jury Instructions—Criminal (2nd).

¶ 6 *Humphreys* is procedurally indistinguishable from the instant case. There, the trial court asked each juror the same questions referenced above and determined they had been death qualified. Thereafter, during general *voir dire*, the trial court advised defense counsel it would not allow argument about the death penalty because the jurors had been death qualified. *Humphreys*, 947 P.2d at 572. Defense counsel then asked a prospective juror if she believed the death penalty should be reserved for special instances. *Id.* The State objected, and the trial court told defense counsel he could *voir dire* the prospective jurors about aggravating and mitigating circumstances. *Id.* Defense counsel then asked *most* of the prospective jurors if they could consider a sentence of life or life without parole. *Id.* Thereafter, we held "[b]ecause the trial court allowed defense counsel to life qualify prospective jurors, we find no *Morgan* error occurred."

¶ 7 This case is no different. Although defense counsel was initially denied the ability to ask a laundry list of questions set forth in its pre-trial motion, defense counsel was allowed to ask its own questions during general voir dire. During that time, defense asked many of the jurors life-qualifying questions. Thus, defense counsel asked: "you still think, even though he has admitted to all, and he will admit to all of the circumstances concerning the murder and the shooting in Muskogee County, that he still should have an opportunity to present to you mitigating circumstances on why his life should not be taken?"; "Benny Jones intends to testify ... I committed that murder ... Do you think that in and of itself should cause him to be given the death penalty?"; "would you be able to listen to Benny Jones in order to determine whether there has been a change in his life that ... should be taken into consideration on whether or not the death penalty should be given?"; "would you be able to consider any other facts in evidence in this case in trying to determine whether he should be given life or life without parole?"; "At this point in time, do you feel you are biased against Benny Jones?"; "could you still give consideration to mitigating circumstances, and if you found that those mitigating circumstances were strong enough, would you be able to consider life without parole or life, even if you found aggravating circumstances?"; "Do you feel that because he admits to the crime ... that he should be given the death penalty without any other consideration?"; and "Does any of the research or anything that you did, do you think in any way gives you some preconceived notions as to whether or not Benny Jones should be sentenced to death?" (Tr. at 182, 183, 184, 185, 186–187, 189, 194).[2]

¶ 8 Appellant points to one place in the record where his counsel asked whether the death penalty "ought to be imposed for every particular class of crime, like a murder? For every murder that ought to have the death penalty?" (TR. at 249). The State objected to this question, and, just as in *Humphreys*, the trial court cautioned counsel because the trial court had already made inquiry into the death penalty. However, defense counsel was still allowed to ask the juror if he understood he was not obligated to invoke the death penalty and that he still had the options of life or life without parole if he found the mitigating circumstances were such that the death penalty should not be invoked.

---

1. Remarkably, *Humphreys*, a case in which each of my colleagues voted to affirm a death penalty conviction on resentencing, involved the exact same trial judge.

2. The majority's conclusion that questions regarding a juror's ability to consider mitigating circumstances do not expose a juror's inclination to impose the death penalty automatically, but only show a willingness to "consider not imposing the death penalty" is baffling to say the least.

(O.R. at 251). The juror indicated he understood these points.

¶ 9 *Morgan* states that a defendant is entitled, "upon his request," to inquire to discern those jurors who are predetermined to impose the death penalty. *Morgan*, 504 U.S. at 736, 112 S.Ct. at 2233. I see nothing in the record which demonstrates defense counsel was denied any such request during general *voir dire*. I see nothing in the record to support the majority's statement that "counsel was prevented from similarly questioning any other panel member." [3] Here, the trial court informed the potential jurors of the three possible punishments and asked if the juror had feelings about capital punishment which would prevent or substantially impair him or her from considering all possible punishments. Just as in *Hain*, 919 P.2d at 1139, we should find no error in this inquiry. The sentence should be affirmed with respect to this point.

JOHNSON, Judge: specially concurs.

¶ 1 I specially concur in the opinion herein as it relates to the reversing and remanding this case for resentencing. I wish to make it clear that in Proposition II appellant objects to first the question asked potential jurors by the court and secondly complains that appellant was not allowed to ask the following question, "Do you think that the death penalty ought to be imposed for every particular class of crime, like a murder, for every murder?"

¶ 2 I do not believe the first question asked by the court was error but I agree with the opinion as it relates to the second. It clearly was error not to allow counsel to ask questions as to whether or not the jury believed by a finding of guilt that the jury would automatically impose the death penalty. Counsel should be allowed to ask questions concerning the automatic imposition of the death penalty. Therefore, I specially concur but wish to make my position clear as to the

specific circumstance I find to be the reversible error herein.

---

3. One of the jurors originally seated was later excused after receiving a threatening phone call. Defense counsel objected to the trial court's decision to excuse this juror, indicating "I think the jurors, as set up, was (sic) a fair and impartial set of jurors...." (Tr. at 416).